# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| M.B., et al., | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )    No. 3:21-CV-317 |
| | ) |
| GOVERNOR BILL LEE, et al. | ) |
| | ) |
|    Defendant. | ) |

## AMENDED AND RESTATED MOTION TO ALTER OR AMEND JUDGEMENT

Comes Now Defendant Knox County Board of Education ("KCBOE"), by and through counsel, and, pursuant to Fed. R. Civ. P. 59(e), moves this honorable Court to Alter or Amend its judgment granting preliminary injunction against KCBOE [Doc. 35] (hereinafter "the Order") due to the manifest injustice which would result from the implementation of such order as written; the Court's clear error of law in interpreting Section 504 and the ADA to require a universal mask mandate as an reasonable accommodation, and newly discovered facts demonstrating the undue burden on the Knox County school system. In support whereof, KCBOE would rely upon the declarations of Jason Myers and Jon Rysewyk and attached exhibits, KCBOE would state as follows[1]:

KCBOE is filing this Amended Motion to Alter or Amend Judgment in order to preserve for appeal the issues raised below and bring to new facts to the Court's attention. KCBOE realizes

---

[1] Attached hereto are Redacted Emails from concerned parents, the Declaration of Jason Myers and the Declaration of Jon Rysewyk.

1

that this motion replaces for its earlier Motion to Alter or Amend.[2] However, KCBOE would stress that the issue of exemptions to the Court's ordered mask mandate—the untenable position in which KCBOE finds itself in attempting to implement the court's order without being able to provide accommodations to students and employees who cannot wear masks but are neither autistic nor recipients of tracheotomies— is of extreme urgency, and should be resolved at the court's earliest opportunity.

### THE INJUNCTION ORDERED BY THIS COURT IS SUBJECTING THE STUDENTS OF KCBOE TO A MANIFEST INJUSTICE

KCBOE has been flooded with parents requesting exemptions to the mask mandate as a reasonable accommodation due to their students medical, behavioral, or developmental needs. During the last school year, these students would have been exempted from the mask mandate and, on September 28, 2021, KCBOE denied those requests in accordance with its interpretation of the Order. Those students were sent home or kept home by their parents. [See Attachment 1; redacted emails from two parents as an example]. Likewise, students with down syndrome were sent home as they were psychologically and behaviorally unable to wear a mask despite the use of positive behavior supports, learning modules, reward systems and outright begging of school staff.

Paragraph No. Three of the Order commits KCBOE to "enforce—with immediate effect— the mask mandate that was in place in all Knox County Schools during the 2020-2021 school year." Doc. 35 at PageID #:857. The Order (see Paragraphs five and six at PageID#: 858) also mandates as follows:

> 5. Any individual with autism or a tracheotomy is hereby **EXEMPT** from the
>
> Knox County Board of Education's mask mandate. [footnote omitted]

---

[2] KCBOE hereby incorporates by reference all arguments made in its Response in Opposition to the Preliminary Injunction, its first Motion to Alter or Amend and the List of Potential Medical Exemptions as if fully restated herein.

> 6. The Knox County Board of Education is **ORDERED** to identify, in a written filing with the court, any other medical conditions that it believes may require exemptions from its mask mandate. The Knox County Board of Education is **ORDERED** to submit this filing to the Court within five days. Plaintiffs are **ORDERED** to respond to this filing within forty-eight hours.

Reading these paragraphs together, KCBOE interprets them to state that the Court is ordering a mask mandate as it was established the previous school year, but instead of allowing the exemptions present in the policy instituted by KCBOE last school year, the Court is only permitting the exemptions of autism and tracheotomies, with the possibility of further exemptions to be granted upon the parties' fulfilling the requirements of paragraph six of the Order.

KCBOE asserts that the framework proposed by the Court presents a manifest injustice which calls for an immediate remedy from the Court. A list of medical conditions to be exempted is simply not a workable system and will result in a list of exemptions that are both under- and over-inclusive. A determination of if a student must be exempted from wearing a mask should be made on an individualized basis. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 688, 121 S. Ct. 1879, 1896 (2001). To create a blanket list of "conditions" that prevent the wearing of a mask is contra to the purpose of the ADA. *Id.* Otherwise, this Court and KCBOE, would merely be "speculat[ing] about a person's condition and would, in many cases, [be forced to] make a disability determination based on general information about how an uncorrected impairment usually affects individuals, rather than on the individual's actual condition." *Sutton v. United Air Lines*, 527 U.S. 471, 483, 119 S. Ct. 2139, 2147 (1999) (other elements of the case have been superseded by statute).

For example, not every student with autism needs to be exempted from mask wearing as sensory concerns and needs will be different from student to student. Likewise, one student with asthma may need to be exempted from wearing a mask while there will be another student who only carries an inhaler as a precaution but has never used it. Under the Court's framework, both of those students would be exempted from wearing a mask.[3] Contrariwise, no matter how many medical conditions KCBOE lists in its filing to comply with paragraph six of the Order, it's entirely possible that it will miss a particular condition which some individual has for which he/she should have an exemption.[4]

KCBOE has many students who were exempted under last year's mask mandate policy for various medical conditions other than autism or tracheotomies. Examples include hearing and speech disorders, developmental delays, Down Syndrome, asthma, dermatological issues, behavioral issues, and heart conditions.[5] In fact, most of those students have in-place Individual Education Programs (IEPs) or 504 plans that document their disability and KCBOE made individualized determinations that a mask exception was an appropriate accommodation for them. At a bare minimum, if KCBOE implements the order as written, it will be faced with violating either the Order or students' (and perhaps employees') rights under the ADA and Section 504 because KCBOE will be forced to deny them their previously agreed to reasonable accommodation. KCBOE doubts that this was the Court's intent, but the Order contains no further exceptions.

---

[3] Presuming that the Court would grant asthma as an additional medical condition for which an exemption from the universal mask mandate would be granted.

[4] There is also the concern that a student may not have a medical condition that physically prevents the wearing of a mask but wearing a mask would be an inherent injustice to that student. For example, a student who is confined to a wheelchair and uses his mouth to hold a pen and/or control his wheelchair. A mask might cause that student no physical harm, but it would obviously impede his learning, functioning, and be detrimental.

[5] Pending further action of this court, KCBOE will submit as comprehensive a list as it can in accordance with Paragraph 6 of the Order.

Apart from those individuals who have plans in place which expressly exempt them from mask-wearing, there will be those who should be exempted due to any number of conditions or circumstances but haven't been because KCBOE hasn't had the need to address those individuals' conditions or circumstances in an IEP or 504 plan. It will take significant time to develop these plans for all these individuals.

The mask mandate policy previously implemented by KCBOE (Policy C-240, "Face Coverings")[6] stated that face coverings must be worn by students, employees, and visitors with the following exceptions:

1. Students, employees, and visitors may remove masks or face coverings for eating and drinking;

2. Students, employees, and visitors may be exempted from this policy by the school principal due to a documented medical condition; and students with health, behavioral, or other disability concerns, as noted in his or her IEP or 504 plan(s), will be addressed on an individual basis and afforded all protections and safeguards under federal and state law;

3. Students, employees, and visitors may remove masks or face coverings on a case-by-case basis for specific instructional needs and other activities (such as, when 6 feet distancing can be maintained, outdoor recess and/or other appropriately distanced activities), as determined by the principal in consultation with the teacher, and permission will not be unreasonably withheld, in which case the teacher will utilize appropriate social distancing measures; and

4. Students, employees, and visitors may be exempted from this policy due to special behavioral or individualized needs as determined by the school principal.

KCBOE hereby moves this honorable Court to alter or amend the Order in order to permit KCBOE to re-institute this exception framework in lieu of the granting or denial of specific medical condition exceptions as outlined and implied in paragraphs five and six of the Order. KCBOE further moves this Court to alter or amend the Order in order to allow any student or staff

---

[6] https://www.knoxschools.org/cms/lib/TN01917079/Centricity/domain/974/board%20policies/C-240%20Face%20Coverings.pdf, last accessed 9/25/2021. Also attached as Exhibit 2 to Declaration of Jason Myers, filed in support hereto.

5

who was exempted from KCBOE's previous mask policy to be exempted from the Court's Order. The students who were exempted last year pursuant to Policy C-240 have already provided the school system with medical information and documentation in order to have IEPs and 504 plans, and KCBOE has already made an individualized accommodation determination for those students. See Paragraph No. 2 of policy, *supra*.

KCBOE believes that the framework used last schoolyear is simpler to implement and would better serve the students of Knox County, including the Plaintiffs, than a list of medical conditions exempted, which would be both under- and over-inclusive. Furthermore, giving KCBOE the freedom to grant such exemptions would allow it to comply with federal disability and Special Education law, which mandates that people with certain conditions receive an individualized inquiry into their needs. Finally, allowing KCBOE to implement such a system would serve the interest of judicial economy. In the event that this court maintains exclusive control over which conditions are and are not exempted, two scenarios are possible, if not likely: (a) KCBOE will need to file requests for additional exemptions with the court as such needs arise, or (b) KCBOE will be sued by persons who believe they are entitled to an exemption and for whom KCBOE was unable to obtain an exemption.

**NEWLY DISCOVERED FACTS DEMONSTRATE THE UNDUE BURDEN THE INJUNCTION IS PLACING ON KCBOE**

KCBOE immediately notified staff and parents of the Court's order on September 24, 2021 and provided preliminary guidance regarding how the injunction would be enforced at KCBOE schools. KCBOE closed schools on September 27, 2021 to bring all staff in for an in-service training day. At that time, staff were instructed in how the mask mandate would work and provided guidance on how to address student and staff resistance to masking. KCBOE staff were informed

6

to follow the protocol developed during the last school year. For any student who refuses to wear a mask, student discipline would be addressed as follows:

- 1st offense: Verbal warning
- 2nd offense: Verbal warning
- 3rd offense: Removed from the general population
- 4th offense: Parent pick-up

KCBOE staff that refused to wear a mask would be given a verbal warning and if the refusal continued would be sent home without pay. At the same time, a local Facebook group started called Knox County Parents Against Mandates. It currently has over 3,500 (three thousand five hundred) members. During the time the group was public, there were numerous posts organizing protests or suggesting that students attend schools unmasked as a form of protest. KCBOE began implementing the Court's injunction on September 28, 2021.

On September 28, 2021, over 700 (seven hundred) students, including over 200 (two hundred) *elementary* school aged children, who refused to wear a mask at school and were isolated in large rooms until their parents picked them up from school. Approximately 16 (sixteen) staff members (including at least 10 teachers and 5 paraprofessionals) were sent home without pay for refusing to wear a mask, and although this number may seem small, each teacher is responsible for a classroom of 20-25 students and a paraprofessional often provides direct support for multiple students.[7] Therefore, approximately 200 (two hundred) students were without their teacher or paraprofessional that day. In *one* day, this Court's order has negatively impacted the educational rights of almost 1000 students. As this brief is being filed on September 29, 2021, there are approximately 578 students are refusing to wear a mask, this number may change as more information is received by KCBOE staff. At this time, only one of the staff members sent home

---

[7] At least three of these staff members, a teacher and two paraprofessionals, have resigned rather than comply with the court-ordered mandate.

7

yesterday has returned to work. It is evident that parental and student resistance to the Court's order will continue.

KCBOE hereby moves this honorable Court to alter or amend its Order by not implementing a mandatory injunction against KCBOE. As argued in its initial brief, in court and as these new facts demonstrate, the mask mandate ordered by this Court creates an undue burden on KCBOE and should be removed until a full trial on the merits of this case can be held.

## THE COURT'S MANDATAORY INJUNCTION AGAINST KCBOE IS A CLEAR ERROR OF LAW

Although the Sixth Circuit has not precisely defined "clear error" in the context of the Rule 59(e) analysis, KCBOE acknowledges that it is a very high bar to meet. *See Dorger v. Allstate Ins. Co.,* Case No. 2-08-56, 2009 U.S. Dist. LEXIS 61686, 2009 WL 2136268, at *1 (E.D. Ky. July 16, 2009) (A Rule 59(e) movant "must not only establish that errors were made, but that these errors were so egregious that an appellate court could not affirm the judgment.") A party must demonstrate that the district court committed "a clear error of judgment, such as applying the incorrect legal standard, misapplying the correct legal standard, or relying upon clearly erroneous findings of fact." *ACLU of Ky. v. McCreary Cty.*, 607 F.3d 439, 450 (6th Cir. 2010).

Section 504 is a federal law that prohibits any entity that receives federal financial assistance from discriminating against persons with disabilities. *See* 34 CFR 104.4 (a). Likewise, Title II of the Americans with Disabilities Act is a federal law that prohibits state and local governments (such as public-school districts, public colleges and universities, and public libraries) from discriminating against persons with disabilities. Typically, Section 504 and Title II nondiscrimination standards are the same and are frequently analyzed together.

KCBOE asserts that the Court clearly erred in its interpretation of the ADA and Section 504 as it applies to this case. Although Plaintiffs have framed this case as a debate about masking

8

or not masking, that is not the issue at the heart of this case. The issue is whether KCBOE voting to not have a mask mandate, is a denial of a *reasonable accommodation* to Plaintiffs. KCBOE asserts that the Plaintiffs failed to demonstrate that a universal mask mandate was required by the ADA or Section 504, and that this Court exceeded its authority by ordering a "reasonable accommodation" that infringes on the rights of other students. In in the interest of efficiency, KCBOE notes that it briefed these issues extensively in its Response in Opposition to an injunction and adopts as if fully restated herein all arguments made in that pleading. [Doc. 14].

In essence, Plaintiffs and this Court have acknowledged that KCBOE has taken no action to bar or prevent Plaintiffs from accessing KCBOE's buildings or its educational programming. Absent this "denial" of services, it is clear error for this Court to determine that Section 504 or the ADA have been violated. Instead, this Court has accepted Plaintiffs' argument that the lack of mask mandate has the "effect" of making KCBOE's buildings unsafe and this prevents Plaintiffs' "access" to KCBOE programs and services. Moreover, KCBOE has ensured that all students may access its Virtual Schools and KCBOE contends that is a sufficient reasonable accommodation for students particularly impacted by COVID-19. If KCBOE is already providing a reasonable accommodation, then no further accommodations are required by law. *Gaines v. Runyon*, 107 F.3d 1171, 1178 (6th Cir. 1997) ("The Rehabilitation Act does not impose a duty to provide every accommodation requested."); *Walsh v. UPS*, 201 F.3d 718, 725-26 (6th Cir. 2000) ("The burden of establishing that the proposed accommodation is reasonable remains with the plaintiff, regardless of whether plaintiff has direct or indirect evidence in support of his or her ADA claim.")

Plaintiffs raised the issues of physical access and "integrated setting" during the preliminary injunction hearing. Under the ADA, public entities must provide (1) program access,

9

and (2) in an integrated setting — unless separate programs are necessary to ensure equal benefits or services. This Court decided that Virtual Schools, despite being identical in all respects to KCBOE's physical schools, were not a reasonable accommodation because they do not allow for in person interaction between staff and students and thus is not the most "integrated setting." It appears then that the issue is not that Plaintiffs are denied "program access,"[8] but that they are denied face-to-face interaction with peers. However, the ADA does not require face-to-face services or settings. The "most integrated setting" is defined as "a setting that enables individuals with disabilities to *interact* with non-disabled persons to the fullest extent possible." 28 C.F.R. pt. 35 app. A (2010). To that end, students at virtual schools attend classes with non-disabled peers and interact with them just as they would in a physical building, only through video interface rather than in person. Virtual students are not in a "segregated setting," but are enjoying the community-based programming as sought by the ADA. *Olmstead v. L. C. by Zimring*, 527 U.S. 581, 593, 119 S. Ct. 2176, 2183 (1999).[9]

As to the argument made by Plaintiffs that the lack of a mask mandate renders KCBOE's physical buildings inaccessible, that is still not a basis for a universal mask mandate. First, Plaintiffs have not alleged that they cannot physically enter KCBOE buildings; instead, they say they are at heightened risk due to COVID-19. However, the fact remains that in Tennessee, a LEA[10] is not responsible for providing a 100% safe environment for its students. KCBOE has

---

[8] Tenn. Const. Art. XI, § 12 proscribes that a system of free public schools will be created and supported by the State. Tenn. Code Ann. § 49-1-101 then establishes such a system and by virtue of Tenn. Code Ann. § 49-2-203, it is the KCBOE that is responsible for managing and controlling the Knox County school system. In essence, the fundamental purpose of the "program" KCBOE offers is to provide a free public education to all students enrolled in its district. There is no dispute that Plaintiffs can fully access KCBOE educational programming.

[9] Moreover, the integrated setting requirement typically applies to the programming, not to reasonable accommodations. *Waskul v. Washtenaw Cty. Cmty. Mental Health*, 979 F.3d 426, 435 (6th Cir. 2020). There has been no argument that either in their in-person schools or virtual schools, these Plaintiffs are unduly isolated away from their non-disabled peers.

[10] "Local Education Agency." The LEA for Knox County is the KCBOE.

taken reasonable measures to slow the spread of COVID-19 in its schools, and a universal mask mandate is simply not a reasonable accommodation in this scenario. Secondly, public entities are not required "to make each of its existing facilities or every part of a facility accessible to and usable by handicapped persons." 34 C.F.R. § 104.22. It is a valid accommodation to provide programming and services at another location if necessary to meet the needs of student with a disability. In this case that location is the virtual setting.

Wherefore, KCBOE hereby moves this honorable Court to alter or amend its Order by not implementing a mandatory injunction against KCBOE. As argued in its initial brief, and herein, the Court made a clear error in construing the ADA and Section 504 to require a universal mask mandate as a reasonable accommodation for individual students. Furthermore, newly discovered evidence demonstrates that the mask mandate both as it is applied, due to the need for more flexibility in providing exemptions to students and staff, and overall, because of the student, staff, and community resistance to the mandate and refusal to comply with the same, places an undue administrative burden on KCBOE. Finally, KCBOE must at bare minimum receive the relief requested regarding more flexible exemptions, so that individuals with specific disabilities that prevent them from wearing masks may work in and attend school without violating this Court's Order.

Respectfully submitted,

s/David M. Sanders
David M. Sanders (BPR # 016885)
Amanda Lynn Morse (BPR # 032274)
Deputy Law Director
Suite 612, City-County Building
400 Main Street
Knoxville, TN 37902
(865) 215-2327

11

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing was filed electronically on the date recorded by the Court's electronic filing system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular United States Mail, postage prepaid. Parties may access this filing through the Court's electronic filing system.

                                              s/David M. Sanders
                                              David M. Sanders