# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| M.B., et al., | ) |
|     Plaintiff, | ) ) ) |
| v. | ) No. 3:21-CV-317 |
| GOVERNOR BILL LEE, et al. | ) ) ) |
|     Defendant. | ) |

## MOTION TO STAY INJUNCTION PENDING APPEAL

Comes Now Defendant Knox County Board of Education ("KCBOE"), by and through counsel, and pursuant to Fed. R. Civ. P. 62, moves this honorable court to stay the preliminary injunction issued on September 24, 2021, pending the appeal in this matter. In further support of this motion, KCBOE states as follows:

## APPLICABLE LEGAL STANDARD

Federal Rule of Civil Procedure 62(d) states that "[w]hile an appeal is pending from an interlocutory order . . . that grants . . . an injunction, the court may suspend, modify, restore or grant an injunction on terms for bond or other terms that secure the opposing party's rights."[1] When considering a motion to stay pending appeal, a court must consider "the traditional factors governing injunctive relief," including "(1) whether the defendant has a strong or substantial likelihood of success on the merits; (2) whether the defendant will suffer irreparable harm if the

---

[1] KCBOE recognizes that it has not yet filed a Notice of Appeal as its Motion to Alter or Amend the Judgment is still pending and thus, the time for appeal has not yet begun. *See* Fed. R. App. P. 4(a). Federal Rule of Appellate Procedure 8 requires a party seeking a stay of an injunction in the District Court first. Fed. R. App. P. 8(a)(1). However, at least two district courts in the Sixth Circuit have determined that a district court does not have jurisdiction to hear a motion for stay pending appeal once a notice of appeal has been filed. *See Memphis A. Phillip Randolph Inst. V. Hargett*, No. 3-20-cv-00374, 2020 U.S. Dist. LEXIS 187062 (M.D. Tenn. Oct. 8, 2020); *Doe v. Franklin Cnty. Children's Servs.*, No. 2:20-cv-4119, 2020 U.S. Dist. LEXIS 174145 (S.D. Ohio Sept. 22, 2020). Thus, because KCBOE anticipates filing a notice of appeal and out of an abundance of caution, it submits this Motion to Stay prior to filing a notice of appeal.

1

district court proceedings are not stayed; (3) whether staying the district court proceedings will substantially injure other interested parties; and (4) where the public interest lies." *Baker v. Adams Cnty./Ohio Valley Sch. Bd.*, 310 F.3d 927, 928 (6th Cir. 2002). Furthermore:

> These factors are to be balanced. The strength of the likelihood of the success on the merits that needs to be demonstrated is inversely proportional to the amount of irreparable harm that will be suffered if a stay does not issue. However, in order to justify a stay of the district court's ruling, the defendant must demonstrate at least serious questions going to the merits and irreparable harm that decidedly outweighs the harm that will be inflicted if stay is granted.

*Id.*

## DISCUSSION

A stay is appropriate in this matter because KCBOE can demonstrate a likelihood of success on the merits. As discussed in both KCBOE's initial Response in Opposition to the Motion for Preliminary Injunction [Doc. 14] and its Amended and Restated Motion to Alter or Amend the Judgment [Doc. 40], affirmatively requiring 60,000 students to mask is not a reasonable accommodation under the Section 504 or the American with Disabilities Act. Further, as demonstrated by the Declarations of Jason Myers, Jon Rysewyk, Scott Bolton, Daniela Laws, Michelle Flynn, Mollie Seay, and Knox County parents of students with disabilities C.J., T.J., S.M., and M.L. KCBOE and its students face irreparable harm if the injunction is permitted to continue. Finally, the public interest lies in permitting KCBOE to follow policies adopted by its elected board rather than a Court's Order. For these reasons, KCBOE respectfully requests that the Court enter an order staying the preliminary injunction until resolution on appeal.

**I.     KCBOE can demonstrate a likelihood of success on the merits.**

KCBOE is likely to succeed on the merits in its appeal because a universal mandate is not a reasonable accommodation under the ADA.[2] KCBOE does not agree that universal masking in a reasonable accommodation for *these* plaintiffs, <u>and that is the issue:</u> whether this Court can order a mask mandate as a reasonable accommodation pursuant to the ADA and Section 504. Reasonable accommodations must be made when necessary to avoid discrimination on the basis of disability unless the public entity can demonstrate that the modifications would result in a "fundamental alteration" or of the service, program or activity. *R.K. v. Bd. of Educ.*, No. 5:09-CV-344-JMH, 2014 U.S. Dist. LEXIS 121340, at *24 (E.D. Ky. Aug. 28, 2014)**;** 28 C.F.R. § 35.130(b)(7).

Tenn. Const. Art. XI, § 12 mandates that a system of free public schools will be created and supported by the State. Tenn. Code Ann. § 49-1-101 then establishes such a system and by virtue of Tenn. Code Ann. § 49-2-203, it is the local board of education (in this case, KCBOE) that is responsible for managing and controlling "all public schools established… under its jurisdiction." Tenn. Code Ann. §49-2-203(a)(2). In essence, the fundamental purpose of the "program" KCBOE offers is to provide a free public education to all students enrolled in its district.

As discussed in more detail below, KCBOE students are being harmed by the current mask mandate. The universal mask mandate cannot be a reasonable accommodation when it directly infringes on the rights of other students.

## II. Knox County Students will suffer irreparable harm if the injunction is not stayed.

"In evaluating the harm that will occur upon whether or not the stay is granted," courts generally consider three factors: "(1) the substantiality of the injury alleged; (2) the likelihood of

---

[2] KCBOE also believes it likely to succeed on the merits for the reasons set forth in its Response in Opposition to the Motion for Preliminary Injunction [Doc. 14] and its Amended and Restated Motion to Alter or Amend the Judgment [Doc. 40]. It hereby incorporates those arguments by reference here.

3

Case 3:21-cv-00317-JRG-DCP   Document 43   Filed 10/01/21   Page 3 of 10   PageID #: 926

its occurrence; and (3) the adequacy of the proof provided." *Mich. Coalition of Radioactive Materials Users, Inc.*, 945 F.2d 150, 153 (6th Cir. 1991). "[T]he harm must be both certain and immediate, rather than speculative or theoretical." *Id.* The events which have unfolded since this Court's decision demonstrate that students have already faced irreparable harm and are likely to continue to do so.

Even in the few days that the mask mandate has been in place, KCBOE and its students have suffered irreparable harm that is likely to continue. Unlike the Plaintiffs' *theoretical* denial of access, some special education students are now being denied *actual* access to the schools because they must be sent home if they are medically, behaviorally, or developmentally unable to wear masks.[3] For example, KCBOE has approximately 99 (ninety-nine) students with Down Syndrome. Although many students with Down Syndrome are able to wear a mask appropriately, many are not capable of wearing a mask, including one elementary aged student who had to be sent home despite the many efforts of staff at Knox County Schools ("KCS") to get him to wear a face mask. KCBOE has been informed that he will not return to school until the mask mandate allows for him to be exempted. [Declaration of Michelle Flynn]. Likewise, some students with disabilities have significant behavior concerns and are not cooperative, solely due to their disability, with mask wearing. For example, this week an emotionally disturbed high school had to be isolated from his peers because he was *behaviorally* unable to wear a mask. He eventually engaged in disruptive behavior until he left the school building. [Declaration of Mollie Seay]. Such behavior was likely a manifestation of his disability and ordinarily a student with his disabilities would not be denied access to his school on that basis. Many parents of students with disabilities have been impacted by the Order causing his/her student to be excluded from the

---

[3] Among the Plaintiffs, two have continued in-person learning. One student remains virtual. The final student has chosen not to re-enroll despite a mask mandate and continues to be homeschooled.

4

Case 3:21-cv-00317-JRG-DCP   Document 43   Filed 10/01/21   Page 4 of 10   PageID #: 927

educational programming offered by KCBOE.[4] [Declaration of C.J.]; s*ee also* [Declarations of T.J., M.L. and S.M.]

Students without disabilities are also suffering from learning loss. KCBOE immediately notified staff and parents of the Court's order on September 24, 2021. KCBOE provided preliminary guidance to teachers and staff regarding how the injunction would be enforced at KCBOE schools. KCBOE closed schools on September 27, 2021, to bring all staff in for an in-service training day. At that time, staff were instructed in how the mask mandate would be implemented and provided guidance on how to address student and staff resistance to masking. KCBOE staff were informed to follow the protocol developed during the last school year. For any student who refuses to wear a mask, student discipline would be addressed as follows:

- 1st offense: Verbal warning
- 2nd offense: Verbal warning
- 3rd offense: Removed from the general population
- 4th offense: Parent pick-up

KCBOE staff that refused to wear a mask would be given a verbal warning and if the refusal continued would be sent home without pay. At the same time, a local Facebook group started called Knox County Parents Against Mandates, it currently has over 4,200 (four thousand and two hundred) members. During the time the group was public, there were numerous posts organizing protests or suggesting that students attend schools unmasked as a form of protest. Those threats of

---

[4] KCBOE has reviewed Plaintiff's Response in Opposition to KCBOE's Motion to Alter or Amend. [Doc. 42]. KCBOE is not convinced that Plaintiffs have proposed a reasonable framework for accommodation. First, not all educational disabilities are connected to a medical/mental health disability. Further, how is KCBOE supposed to confirm that notes are only provided by a "treating" physician? KCBOE cannot demand medical records and does not have access to full medical histories for all of its students. Moreover, there is a whole segment of the population that may not have access to a consistent "treating" physician. Students in foster care often see a different medical professional at each visit. Likewise, students of various economic situations may not have access to routine medical care. Dr. Ker can opine that KCBOE's prior accommodation system is too "vague," but even Plaintiffs admit that it worked last year.

protests have come into fruition. For example, for the past few days, there have been protestors at Farragut schools with students having to walk past protesting adults calling them "sheep" and allegedly trying to physically disrupt their path to school.[5]

KCBOE began implementing the Court's injunction with students in the class on September 28, 2021.[6] On that date, over 700 (seven hundred) students, including over 200 (two hundred) *elementary* school aged children, refused to wear a mask at school and were isolated in large rooms until their parents picked them up from school. Approximately sixteen (16) staff members (including at least 10 teachers and 5 paraprofessionals) were sent home without pay.[7] Teachers typically supervise classrooms of 20-25 students, and a paraprofessional may provide direct support for multiple students. Thus, in *one* day, this Court's order has negatively impacted the educational rights of hundreds of students. Likewise, on September 29, 2021, at least another 578 students refused to wear a mask and were sent home along with an untold number of students being kept home by their parents.[8] At this time, only one of the staff members sent home on September 28, 2021 has returned to work. Likewise, 4 (four) school bus drivers have refused to comply with the mask mandate thus impacting 4 (four) entire bus routes. [Declaration of Daniela Laws]. KCBOE Central Office Special Education staff—even Executive team members--were required to be on-site at various schools this week rather than in their normal positions in order to help implement the mask mandate and support students and staff. [Declaration of Michelle Flynn].

---

[5] See Attachment 1; collection of screenshots from a Facebook group and Twitter. *See also* https://www.wvlt.tv/2021/09/28/parents-protest-temporary-federal-mask-order-knox-county-schools-students/; https://twitter.com/KnoxvilleHoller?ref_src=twsrc%5Egoogle%7Ctwcamp%5Eserp%7Ctwgr%5Eauthor (last visited October 1, 2021)

[6] This Court's Order that a mandate would be imposed "immediately" was not issued until Friday, September 24, when students were already in school. As referenced *supra*, schools were closed on Monday, September 27.

[7] At least three of these staff members (a teacher and two paraprofessionals) have resigned rather than comply with the court-ordered mandate.

[8] On that date, there were 5,178 student absences, though there is no way to determine at this time why those students were absent.

On September 30, 2021, community resistance to the mask mandate continued with over 500 students refusing to wear masks and community discussion that many students were being kept home. [Declaration of Jon Rysewyk]. Moreover, it is evident that parental and student resistance to the Court's order will continue. [9] If this continues, those students who are sent home each day due to their failure to wear a mask may be deprived of his/her (Tennessee) constitutional right to a free public education. The only way to enforce the "reasonable accommodation" required by the Court is to directly impact the rights of other students to an education.

The loss of these professionals is exacerbating a staffing shortage at KCBOE. In general, KCBOE has 82 vacant teaching/student support positions that are unfilled, i.e., the school is still trying to hire staff to file those positions. [Declaration of Scott Bolton]. Every teacher or paraprofessional absence is another position that must be filled to meet the needs of students. During this school year, only 20% of KCBOE pool of substitutes have actually been available to substitute. Thus, on September 30, 2021, KCBOE needed 636 substitute teachers or student support staff (paraprofessionals, behavior liaisons, related service providers etc.) and were only able to fill 345 of those positions. Ridgedale Alternative School was forced to close this week due to a staffing shortage. KCBOE expects these staffing shortages will continue. [Declaration of Scott Bolton].

Finally, KCBOE faces potential liability from other students who are unable to medically, behaviorally, or developmentally wear a mask, but are now required to do so. Under KCBOE's former mask policy, students were able to obtain an exemption to masking in their IEP and 504

---

[9] On social media websites, mask mandate opponents discussed having a "Freedom Day" on October 1, 2021. Allegedly students and staff opposed to a mask mandate were asked to stay home from school. KCBOE has no way of telling which absences, if any, can be attributed to that "plan," but would note that the KCBOE staff absence rate jumped from 7.7% to 10.6% from September 30, 2021 to October 1, 2021. [Declaration of Scott Bolton]. Likewise, 6,043 students were absent. This results in 89.71% attendance rate for students, the first time it dipped below 90% all week.

7

Case 3:21-cv-00317-JRG-DCP   Document 43   Filed 10/01/21   Page 7 of 10   PageID #: 930

plans. Such an accommodation is not yet possible under the Court's Order[10] for many students. KCBOE may be in the untenable position of violating the rights of some students in order to comply with the Court's order. At least 4 (four) students have already filed a 504 grievance with KCBOE, or assert that they plan to do so if they are not provided a reasonable accommodation of a mask exemption. Likewise, 7 (seven) KCBOE staff have requested an accommodation or intend to provide medical documentation in support of an exemption. Since the Court's order and KCBOE's implementation of a mask mandate, board members have received numerous threats of litigation from KCBOE parents.

### III.   Knox County has offered reasonable accommodations to mitigate potential harm to the Plaintiffs.

KCBOE has acknowledged and continues to acknowledge the risk posed by the COVID-19 pandemic. KCBOE has adopted the CDC's recommendations of social distancing when possible, intense cleaning protocols, providing hand sanitizer in every classroom, and encouraged mask usage. Plaintiffs also have the option of attending one of KCBOE's three virtual academies. In addition, KCBOE is willing to provide additional accommodations to the Plaintiffs, including ensuring six feet of social distancing for those students wherever, alternate activity time for gym and dining, and placement in learning groups and/or classes with masked students.[11] Thus, KCBOE believes it could mitigate the potential harm to the Plaintiffs if the injunction is stayed.

### IV.   It is not in the public interest for this Court to mandate a universal masking policy.

The public interest would be best served by staying the injunction pending the appeal. This Court's order has already resulted in learning loss for Knox County students and is likely to continue to do so. In addition, COVID-19 is a rapidly changing virus that requires government

---

[10] But see KCBOE's Amended and Restated Motion to Alter or Amend, Doc. 40. Should the Court grant the relief requested in that Motion, KCBOE could grant such exceptions in accordance with Federal Law.
[11] These classrooms and grouping could be comprised to students and staff who were already voluntarily masking.

8

Case 3:21-cv-00317-JRG-DCP   Document 43   Filed 10/01/21   Page 8 of 10   PageID #: 931

entities to respond to every-changing community conditions.  Vaccinations for COVID-19 may be available for children ages 5-11 within the coming months. *See* Jared S. Hopkins, *Pfizer, BioNTech Say Covid-19 Vaccine is Safe for Children Aged 5 to 11*, WALL ST. J., September 20, 2021, *available at* https://www.wsj.com/articles/pfizer-biontech-say-covid-19-vaccine-is-safe-for-young-children-generates-immune-response-11632134701?mod=article_inline.

Thus, community conditions might obviate the need for a universal mask mandate.  Given the need for flexibility to manage a COVID-19 response, it is the public interest to stay the injunction and permit KCBOE to determine the mask policy for schools based on relevant and often-changing community factors. In addition, further medical exemptions could arise which would result in this Court having to frequently field requests for modification of the injunction order based on changing conditions in schools.[12]  Public interest lies in permitting KCBOE manage the COVID-19 response for Knox County schools.

Respectfully submitted,

s/David M. Sanders
David M. Sanders (BPR # 016885)
Amanda Lynn Morse (BPR # 032274)
Deputy Law Director
Suite 612, City-County Building
400 Main Street
Knoxville, TN  37902
(865) 215-2327

---

[12] In fact, despite KCBOE's attempt to create an exhaustive list of conditions that could *potentially* impact a student's ability to consistently wear a mask (medically, behaviorally or developmentally), there have already been parents saying the list was not exhaustive enough. https://www.wate.com/news/parent-says-knox-county-schools-mask-exemptions-list-still-leaves-some-students-out/ (last visited on September 29, 2021).

**CERTIFICATE OF SERVICE**

       I hereby certify that a copy of the foregoing was filed electronically on the date recorded by the Court's electronic filing system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular United States Mail, postage prepaid. Parties may access this filing through the Court's electronic filing system.

                                                s/David M. Sanders
                                                David M. Sanders