| | |
|---|---|
| M.B., et al., | ) |
|     Plaintiff, | ) |
| v. | )    No. 3:21-CV-317 |
| GOVERNOR BILL LEE, et al. | ) |
|     Defendant. | ) |

### REPLY TO RESPONSE IN OPPOSITION TO STAY INJUNCTION PENDING APPEAL[1]

Comes Now Defendant Knox County Board of Education ("KCBOE"), by and through counsel, and replies to Plaintiffs' Response in Opposition to the Motion to Stay Injunction Pending Appeal [Doc. 45] as follows:

At the outset, KCBOE would note that Plaintiffs did not meaningfully address the factors governing injunctive relief. When considering a motion to stay pending appeal, a court must consider "the traditional factors governing injunctive relief," including "(1) whether the defendant has a strong or substantial likelihood of success on the merits; (2) whether the defendant will suffer irreparable harm if the district court proceedings are not stayed; (3) whether staying the district court proceedings will substantially injure other interested parties; and (4) where the public interest lies." *Baker v. Adams Cnty./Ohio Valley Sch. Bd.*, 310 F.3d 927, 928 (6th Cir. 2002). Instead of addressing these factors, and thus the merits of KCBOE's motion, Plaintiffs simply state that they have agreed that there should be further *medical* exemptions from the Court's order, but assert that

---

[1] This reply is submitted after the Court's most recent Memorandum Opinion and Order [Docs. 47 & 48] partially granting KCBOE's Motion to Alter or Amend. Such order obviates some, but not all, of KCBOE's arguments presented in its initial Motion for Stay Injunction Pending Appeal [Doc. 43]. KCBOE would withdraw those arguments which the Court's order has rectified as moot in light of the Court's most recent Amended Order.

1

the other "occasional rabble-rouser[s]," should have no medical or legal voice in this litigation. KCBOE's mission is to serve the needs of all students in Knox County: students such as Plaintiffs, students who—or whose parents—object to the wearing of masks and refuse to comply with a mandate, and students who have some condition which would make them eligible for an exception, exemption, and/or accommodation[2] from a universal mask mandate such as that originally advocated by the Plaintiffs.[3]

KCBOE must contend with the tactics of individuals or groups which add to the stress and difficulty of the education of children in Knox County, but thus far fall short of actually disrupting the educational process. While KCBOE can evict trespassers (that is, persons—usually adults—with no school business to conduct, or those who disrupt the educational process) from its property, it has not chosen at this time to prevent parents from escorting students onto school campuses, which would be within its authority but would cause yet more community discord.[4]

KCBOE would rely on the arguments it has made in prior pleadings regarding why only allowing "medical exemptions" (essentially exempting students on the basis of a diagnosis without inquiry into that student's specific circumstances), is an inappropriate way of deciding a student's

---

[2] Pursuant to an IEP, a 504 plan, or one of the more discretionary standards set out in last year's KCBOE policy C-240, such as a behavioral exception for a particular student based upon his/her particular needs.
[3] Now accommodated by this Court's Order, Doc. 48.
[4] KCBOE believes that under the First Amendment, it cannot prevent parents from expressing political messages while escorting their students to campus, so long as they do not disrupt the educational process. To do so would be in essence to discriminate on the basis of the content of their speech or message, which is impermissible. KCBOE would not, presumably, ban parents walking their children to school who cheer students and staff wearing masks, and/or carrying signs supporting a mask mandate. KCBOE will address any person who presents a security threat or who disrupts the educational process. See, e.g., *Lovern v. Edwards*, 190 F.3d 648, 655 (4th Cir. 1999): "School officials have the authority to control students and school personnel on school property, and also have the authority and responsibility for assuring that parents and third parties conduct themselves appropriately while on school property. *See*, *e.g.*, *Carey v. Brown*, 447 U.S. 455, 470-71, 65 L. Ed. 2d 263, 100 S. Ct. 2286 (1980) (**the Constitution does not leave state officials powerless to protect the public from threatening conduct that disturbs the tranquility of schools**); *Goss v. Lopez*, 419 U.S. 565, 582-83, 42 L. Ed. 2d 725, 95 S. Ct. 729 (1975) (a school official's determination of the existence of an **ongoing threat of disruption of the academic process can justify immediately removing a person from school property**). While the specific contours of the authority and responsibility of school officials are defined by state law, such officials should never be intimidated into compromising the safety of those who utilize school property." **Emphasis** added.

2

accommodations in a *school*. To do so is to violate the letter and spirit of federal disability law, which requires school systems to make accommodations on an individualized basis.[5] Moreover, KCBOE has continued to receive complaints from parents that local area pediatricians' offices have been telling them that they will not be providing any mask exemptions whatsoever, which just highlights the deficiencies of such a plan.[6]

Plaintiffs' petition assumed that because parents complied last school year, they would do so again this school year. As Plaintiffs noted, however, the "factional winds" have shifted, and there is a strong and continuous resistance to compliance with the mask mandate. Every day, hundreds of students are either absent or being sent to isolation rooms in the schools while waiting for their parents to come and pick them up because they refuse to wear a mask. Moreover, some parents are refusing to pick up their children, resulting in students staying for hours isolated from their (mask wearing) peers with no instruction, i.e., they are effectively absent. Plaintiffs have asserted that the truancy process will fix this problem. However, the truancy process may be ineffective, may directly harm students, requires the cooperation of agencies outside the control of KCBOE, and takes take *months* to even begin to be initiated. KCBOE must meet with parents of students not attending school at least twice, attempt to develop plans to increase attendance of that student, then allow time for the "plan" to either work or not work, send home several notices and then, and only then, can KCBOE send truancy information to the local courts. Tenn. Code Ann. § 49-6-3007(e); Tenn. Code Ann. § 49-6-3009 *et. al.* Even after all of those exhaustive steps, it is

---

[5] KCBOE acknowledges that this Court's most recent order, Doc. 48, permits it to adopt a more flexible standard than that advocated by Plaintiffs. KCBOE is merely responding to Plaintiffs' argument here.

[6] This Court has now permitted KCBOE to revert to the standards outlined in its now-sunsetted policy C-240, which permits individualized accommodations. KCBOE acknowledges the reality that some parents may attempt to "game the system" by obtaining an unneeded mask exemption. It appears that few medical professionals will allow themselves to be parties to such an attempt. See, e.g., "Oak Ridge Pediatrician: Few children actually qualify for a medical mask exemption," at https://www.wbir.com/article/news/health/coronavirus/few-qualify-for-a-medical-mask-exemption-knox-county-schools-parents-against-masks-find-ways-around-it/51-851c4323-b292-4c15-8416-2a5f1d0cf6d8, last accessed 10/12/2021.

up to the Juvenile Court and local prosecutor's office to decide to take the next steps. It is completely out of KCBOE's control at that point. *Id.* It is worth noting that even if a student absent because he/she was protesting mask mandates were found to be truant, this finding might only reaffirm in the student's mind that he/she is "fighting the system." It would do nothing to actually give that child an education.

KCBOE acknowledges that the number of students engaging in obvious non-compliance is less than 1% of the student population[7] but that does not mean they do not have the same right to be educated as the Plaintiffs. In fact, generally speaking, this entire case is about less than 1% of the population. Children in Knox County, Tennessee, aged 0-17 have a hospitalization rate of 0.36% and a current death rate of 0%. [Knox County Health Department, https://covid.knoxcountytn.gov/case-count.html, last visited October 11, 2021.] These Plaintiffs do not speak for all students with disabilities. Many students with disabilities have been impacted by the Order causing him or her to be excluded from the educational programming offered by KCBOE[8] and not every student with disabilities, or his/her family agrees that there should be a mask mandate at all.

Finally, KCBOE continues to disagree that universal masking is a reasonable accommodation for *these* plaintiffs, and that is the issue: whether this Court can order a mask mandate as a reasonable accommodation pursuant to the ADA and Section 504. Reasonable accommodations must be made when necessary to avoid discrimination on the basis of disability unless the public entity can demonstrate that the modifications would result in a "fundamental alteration" or of the service, program or activity. *R.K. v. Bd. of Educ.*, No. 5:09-CV-344-JMH,

---

[7] As KCBOE cannot determine which absences are due to a parent's refusing to send their student masked, the actual percentage could be higher.
[8] This issue should be alleviated by this court's issuance of its Amended Order [Doc. 48]. As Knox County Schools is currently on its Fall Break, we do not yet know the impact of the Court's most recent order.

2014 U.S. Dist. LEXIS 121340, at *24 (E.D. Ky. Aug. 28, 2014)**;** 28 C.F.R. § 35.130(b)(7). The universal mask mandate cannot be a reasonable accommodation when it directly infringes on the rights of other students.

      A stay is appropriate in this matter because KCBOE can demonstrate a likelihood of success on the merits. KCBOE and its students face irreparable harm if the injunction is permitted to continue. Finally, the public interest lies in permitting KCBOE to follow policies adopted by its elected board rather than a Court's Order. For these reasons, KCBOE respectfully requests that the Court enter an order staying the preliminary injunction until resolution on appeal.

Respectfully submitted,

s/David M. Sanders
David M. Sanders (BPR # 016885)
Amanda Lynn Morse (BPR # 032274)
Deputy Law Director
Suite 612, City-County Building
400 Main Street
Knoxville, TN  37902
(865) 215-2327

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing was filed electronically on the date recorded by the Court's electronic filing system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular United States Mail, postage prepaid. Parties may access this filing through the Court's electronic filing system.

s/David M. Sanders
David M. Sanders

5

Case 3:21-cv-00317-JRG-DCP   Document 51   Filed 10/13/21   Page 5 of 5   PageID #: 1096