UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| S.B., a minor student, by and through his parents, M.B. and L.H. *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 3:21-CV-00317-JRG-DCP ) |
| GOVERNOR BILL LEE, in his official capacity as Governor of Tennessee, and KNOX COUNTY BOARD OF EDUCATION, | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Knox County Board of Education's Amended and Restated Motion to Alter or Amend Judgment [Doc. 40], Plaintiffs' Response in Opposition [Doc. 42], and the Knox County Board of Education's Reply [Doc. 44]. For the reasons herein, the Court will deny the remainder of the Knox County Board of Education's motion.[1]

### I. BACKGROUND

On August 16, 2021, the Governor of Tennessee, Bill Lee, issued Executive Order No. 84, which states:

> I, Bill Lee, Governor of the State of Tennessee, having declared a continuing state of emergency by Executive Order No. 83, dated August 6, 2021, and by virtue of the power and authority vested in me by the Tennessee Constitution and other applicable law including Tennessee Code Annotated § 58-2-107, do hereby order that a student's parent or guardian shall have the right to opt out of any order or requirement for a student in kindergarten through twelfth-grade to wear a face covering at school, on a school bus, or at school functions, by affirmatively notifying in writing the local education agency or personnel at the student's school.

---

[1] Last week, the Court granted the motion in part and reserved ruling on the remainder of the motion. *See* [Mem. Op. & Order, Doc. 47].

[Executive Order No. 84, Doc. 23]. Not long afterwards, the Knox County Board of Education, in response to the ongoing COVID-19 pandemic, met on September 1, 2021, to discuss and vote on a district-wide mask mandate for its school system, [Am. Compl., Doc. 7, ¶ 52],[2] which consists of ninety schools and 60,000 students, [Hr'g Tr. at 179:24–25, 180:1–6 (on file with the Court)].[3] Approximately 8,000 of those students are disabled. [*Id.* at 180:7–14]. By vote of the board, a mask mandate had been in effect during the entirety of the previous school year, from August 2020 to May 2021, for all ninety schools. [*Id.* at 206:15–25]. But this year, during the board's meeting on September 1, 2021, it decided not to renew the mask mandate by a vote of 5 to 4, [Am. Compl. ¶ 54]—acting at odds with the guidelines of the Knox County Health Department, the American Academy of Pediatrics, and the Centers for Disease Control and Prevention ("CDC"), all of which recommend masks for all students enrolled in kindergarten through twelfth grade, [Dr. Yaun Decl., Doc. 9-3, ¶ 12; Hr'g Tr. at 55:21–25, 56:1, 69:5–7].[4]

In response to the board's vote, Plaintiffs, on the following day, brought a class-action lawsuit in this Court under Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131 *et seq.*, and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, claiming they are "unable to *safely* attend school without increased risks of serious injury or even death, unlike their non-disabled peers." [Am. Compl. ¶ 54 (emphasis in original)]. Plaintiffs allege that they suffer from underlying medical conditions that expose them to a likelihood of severe illness

---

[2] Plaintiffs' amended complaint is verified under 28 U.S.C. § 1746, *see El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (noting that a "verified complaint" is one that is signed under the penalty of perjury under 28 U.S.C. § 1746), and the Court may therefore rely on it as evidence, *see Barron v. PGA Tour, Inc.*, 670 F. Supp. 2d 674, 677 n.3 (W.D. Tenn. 2009) (stating that "the court may rely on facts contained in affidavits and verified complaints in deciding whether to issue a temporary restraining order or preliminary injunction" (citing Fed. R. Civ. P. 65(b)(1)(A))).
[3] The Court has relied on an uncertified copy of the transcript, which it received from the court reporter immediately after the evidentiary hearing. It does not exactly match the line numbers and page numbers in the certified copy of the transcript that was recently filed in the record. The two copies are otherwise consistent with each other.
[4] On August 11, 2021, the Knox County Board of Health recommended masking indoors regardless of vaccination status. [Hr'g Tr. at 69:5–7].

2

Case 3:21-cv-00317-JRG-DCP   Document 54   Filed 10/18/21   Page 2 of 15   PageID #: 1134

or death from COVID-19, a highly transmissible and sometimes deadly virus that invades the body through the mouth, nose, and eyes and spreads through respiratory droplets that persons produce by speaking, coughing, or sneezing. [Hr'g Tr. at 51:2–25, 52:1–6, 103:8–9]. Children under the age of twelve are not yet eligible to receive COVID-19 vaccines, and some children who are old enough to receive the vaccines may have medical conditions that do not allow their immune systems to sufficiently respond to them. [Dr. Yaun Decl. ¶¶ 21–22].

A ten-year-old fourth grader, Plaintiff T.W. has only one heart ventricle, a congenital defect that impairs his cardiovascular and immune functions, and he also suffers from epilepsy. [Am. Compl. ¶¶ 25–26]. He has undergone multiple open-heart surgeries. [*Id.* ¶¶ 25– 26]. A twelve-year-old sixth grader, Plaintiff M.S. suffers from "Joubert Syndrome, a rare genetic disorder involving brain malformation" that results in cognitive impairments. [*Id.* ¶¶ 22–24]. She is confined to a wheelchair. [*Id.* ¶ 24].[5] An eight-year-old second grader, Plaintiff S.B. suffers from chronic lung disease, Eosinophilic Esophagitis (a chronic immune-system disease of the esophagus), autoimmune disease, and autism. [*Id.* ¶¶ 19–21]. An eleven-year-old sixth grader, Plaintiff M.K. has asthma and is on the Knox County School System's "Asthma Action Plan," an emergency plan. [*Id.* ¶¶ 27–28]. All Plaintiffs are zoned within the public school system of the Knox County Schools. [*Id.* ¶¶ 3, 6, 9, 12].

Plaintiffs claim that the Knox County Board of Education has violated the ADA and the Rehabilitation Act by not providing them with a reasonable accommodation that would enable them—against the backdrop of the COVID-19 pandemic—to have safe and "fundamental *access* to the school building itself." [*Id.* ¶ 55 (emphasis in original)]. Specifically, Plaintiffs cite an "urgent need" for a mask mandate inside Knox County Schools and allege the reasonable

---

[5] The parties have stipulated that M.S. has now been vaccinated. [*Id.* at 121:8–25, 122:1–25].

3

accommodation "being sought in this case is *community masking: protection of selves and others.*" [*Id.* ¶¶ 40, 51 (emphasis in original)]. According to Plaintiffs, the Knox County Board of Education's rejection of a mask mandate is placing them at an "increased risk of serious injury or death by not allowing a simple reasonable modification under the ADA and Rehabilitation Act." [*Id.* ¶ 60]. Also, Plaintiffs claim that Governor Lee has violated the ADA and the Rehabilitation Act because, by promulgating Executive Order No. 84, he denied the Knox County Board of Education "the ability to provide the children with disabilities in the instant matter with the protections they need to attend school safely." [*Id.* ¶ 68].

Plaintiffs bring suit on behalf of all "current and future K-12 students" who are "eligible to attend public school in Knox County, Tennessee, during the coronavirus pandemic," who are unable to receive the vaccine or unable to mount an adequate immune response to the vaccine, and who suffer from one or more of the following medical conditions:

> (a) lung disease, including asthma, chronic obstructive pulmonary disease (*e.g.*, bronchitis or emphysema), or other chronic conditions associated with impaired lung function;
> (b) heart disease, such as congenital heart disease, congestive heart failure and/or coronary artery disease;
> (c) chronic liver or kidney disease (including hepatitis and dialysis patients);
> (d) diabetes or other endocrine disorders;
> (e) hypertension;
> (f) compromised immune systems (such as from cancer, HIV, receipt of an organ or bone marrow transplant, as a side effect of medication, or other autoimmune disease);
> (g) blood disorders (including sickle cell disease);
> (h) inherited metabolic disorders;
> (i) history of stroke;
> (j) neurological or developmental disability (including epilepsy);
> (k) cancer or cancer treatments; and/or
> (l) muscular dystrophy or spinal cord injury.

[*Id.* ¶ 58; *see* Dr. Yaun Decl. ¶ 18 (stating that children with these medical conditions are "more likely to face severe symptoms, require hospitalization, and potentially die" from COVID-19)].

4

Case 3:21-cv-00317-JRG-DCP   Document 54   Filed 10/18/21   Page 4 of 15   PageID #: 1136

Plaintiffs also moved the Court to issue a preliminary injunction[6] that "requir[es] Knox County Board of Education to enforce a mask mandate" and that "enjoin[s] Governor Lee during this litigation from enforcing Executive Order No. 84." [Am. Compl. ¶ 77].[7] Last month, the Court held a hearing on Plaintiffs' motion for a preliminary injunction. The Court heard from several witnesses during the hearing, including Ms. Ashley Paquette, Jason Yaun, M.D., Jennifer Ker, M.D., Jon Rysewik, Ph.D., and Mr. Jason Myers.

Ms. Paquette is a fifth-grade teacher in the Knox County School System and teaches at Farragut Intermediate School. A licensed, board-certified pediatrician, Dr. Yaun is an associate professor of pediatrics at the University of Tennessee Health Sciences Center and practices medicine with the University of Tennessee Le Bonheur Pediatric Specialists in Memphis, where he treats children who are infected with COVID-19. [Hr'g Tr. at 48:5–11, 49:14–16]. A licensed, board-certified immunologist, Dr. Ker is an assistant clinical professor of allergy, pulmonary, and critical-care medicine at the Vanderbilt University Medical Center and practices medicine in Nashville and Brentwood. [Hr'g Witness List, Doc. 25, at 2]. She also treats children who are infected with COVID-19 and who, in some instances, have immune systems that function poorly. [Hr'g Tr. at 97:13–24, 98:20–22]. Ms. Paquette, Dr. Yaun, and Dr. Ker testified on Plaintiffs' behalf. Dr. Rysewik and Mr. Myers appeared on the Knox County Board of Education's behalf. Dr. Rysewik is the chief academic officer and assistant superintendent for Knox County Schools, and Mr. Myers is the executive director of student support for Knox County Schools. [*Id.* at 178:21–22, 217:18–19].

---

[6] In a class-action lawsuit, the Court has license to issue a class-wide preliminary injunction before ruling on class certification. *See Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 433 (6th Cir. 2012) ("[T]here is nothing improper about a preliminary injunction preceding a ruling on class certification.").

[7] Plaintiffs' amended complaint is misnumbered between pages sixteen and eighteen.

The Court ultimately granted Plaintiffs' motion for a preliminary injunction and ordered the Knox County Board of Education to enforce—with immediate effect—the mask mandate that was in place in all Knox County Schools during the 2020-2021 school year, as a reasonable accommodation under the ADA for Plaintiffs and Class Plaintiffs. [Am. Mem. Op. & Order, Doc. 48, at 56]. The Court, however, granted the Knox County Board of Education leave to approve exemptions to the mask mandate under Policy C-240 [Doc. 36-2], which it created and put into effect during the 2020-2021 school year. The Knox County Board of Education has now filed a motion to alter or amend the Court's judgment under Federal Rule of Civil Procedure 59(e). It maintains that relief under Rule 59(e) is appropriate because (1) newly discovered evidence establishes that the mask mandate is placing an undue burden on it and (2) the mask mandate constitutes a clear error of law. Having now carefully considered the Knox County Board of Education's arguments and Plaintiffs' response to those arguments, the Court is prepared to rule on the Rule 59(e) motion.

## II. LEGAL STANDARD

Rule 59(e) states that a party may file a motion to alter or amend judgment within twenty-eight days from the entry of judgment. *See* Fed. R. Civ. P. 59(e). Rule 59(e) permits the Court to alter or amend a judgment based on "(1) a clear error in law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010) (quotation omitted). The Court has "considerable discretion" in deciding whether to grant a Rule 59(e) motion. *Id.* (citation omitted). A Rule 59(e) motion, however, "run[s] contrary" to notions of "finality and repose," and it is therefore "generally discouraged" and "afford[s] relief only under extraordinary

circumstances." *Polzin v. Barna & Co.*, No. 3:07-cv-127, 2007 WL 4365760, at *3 (E.D. Tenn. Dec. 11, 2007).

## III. ANALYSIS

The Court's order granting a preliminary injunction against the Knox County Board of Education is a judgment for purposes of Rule 59(e). *Malam v. Adducci*, 481 F. Supp. 3d 631, 636 (E.D. Mich. 2020); *see Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 414 n.2 (6th Cir. 2012); *Hunter v. Hamilton Cty. Bd. of Elections*, 635 F.3d 219, 232 (6th Cir. 2011). The motion is therefore properly before the Court.

### A. Undue Burden

The Knox County Board of Education states that it has new evidence establishing that the Court's mask mandate is causing it to suffer an undue burden. *See generally* 28 C.F.R. § 35.130(b)(7)(i) (stating that "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity"). It believes it is suffering an undue burden because 700 students and 16 staff members have refused to wear masks since the Court's mask mandate went into effect. [Knox Cty. Bd. of Educ.'s Mot. at 7]. Of the 16 staff members, 10 of them are teachers and "were sent home without pay." [*Id.*]. The Knox County Board of Education asserts that the Court's mask mandate has therefore "negatively impacted the educational rights of [some] students" and that "parental and student resistance . . . will continue." [*Id.* at 8].

The Knox County Board of Education, however, cites no legal grounds—statutes, regulations, or case law—by which the Court can determine, under the facts it now describes

7

to the Court, that the mask mandate is causing it to endure an undue administrative burden. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (alteration in original) (quotation omitted))). The Knox County Board of Education's failure to cite legal authority is fatal to its motion because it is not without grist to develop its cadaverous argument. *Id.* Although not precisely on point, Title I's implementing regulations contain an instructive definition of the term "undue hardship,"[8] as it applies to the provision of a reasonable accommodation:

> (1) In general. Undue hardship means, with respect to the provision of an accommodation, significant difficulty or expense incurred by a covered entity, when considered in light of the factors set forth in paragraph (p)(2) of this section.
> (2) Factors to be considered. In determining whether an accommodation would impose an undue hardship on a covered entity, factors to be considered include:
> (i) The nature and net cost of the accommodation needed under this part, taking into consideration the availability of tax credits and deductions, and/or outside funding;
> (ii) The overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation, the number of persons employed at such facility, and the effect on expenses and resources;
> (iii) The overall financial resources of the covered entity, the overall size of the business of the covered entity with respect to the number of its employees, and the number, type and location of its facilities;
> (iv) The type of operation or operations of the covered entity, including the composition, structure and functions of the workforce of such entity, and the geographic separateness and administrative or fiscal relationship of the facility or facilities in question to the covered entity; and

---

[8] The ADA is comprised of a "tripartite structure." *Marble v. Tennessee*, 767 F. App'x 647, 650 (6th Cir. 2019). Title I protects disabled individuals from discrimination in the workplace; Title II protects their access to public services; and Title III protects their access to public accommodations. *Id.* (citing 42 U.S.C. §§ 12112, 12132, 12182). Plaintiffs are suing Defendants under Title II, [Am. Compl. at 1–2], but the Sixth Circuit has relied on legal principles under Title I as guidance for determining the outcome of cases under Title II. *See McPherson v. Mich. High Sch. Athletic Ass'n*, 119 F.3d 453, 460 (6th Cir. 1997) ("Not surprisingly, most of the law that has been made in ADA cases has arisen in the context of employment discrimination claims, but we have no doubt that the decisional principles of these cases may be applied to this case [involving Title II]."); *Marble*, 767 F. App'x at 651 ("We turn to [employment discrimination cases under Title I] because we have had fewer opportunities to address reasonable-accommodation claims under Title II.").

> (v) The impact of the accommodation upon the operation of the facility, including the impact on the ability of other employees to perform their duties and the impact on the facility's ability to conduct business.

29 C.F.R. § 1630.2(p)(1)–(2). If the Court were to view the Knox County Board of Education's argument through the prism of these provisions, the tenor of its argument would then appear to be that the mask mandate is causing it to suffer a loss of resources, i.e., its staff, and is leaving it without the ability to perform its duties.

But the circumstances that the Knox County Board of Education has described to the Court do not appear to be meaningfully different from the circumstances that it envisioned and prepared for during last year's voluntary mask mandate. Mr. Myers testified that last year's voluntary mask mandate was a hot-button subject among parents and students, and the Knox County Board of Education had to contend with "argument[s]" about it. [Hr'g Tr. at 222:17–23]. Perhaps anticipating that students, and maybe even teachers, would not comply with its mask mandate, it *voluntarily* adopted a policy under which it would send repeat offenders home. [*Id.* at 208:6–8]. So, the record establishes that the Knox County Board of Education has already envisioned and prepared for circumstances under which some students would not remain on school grounds due to their noncompliance. The evidence, therefore, does not establish that the Court's mask mandate is presenting the Knox County Board of Education with a scenario that was foreign to it under the status quo of last year's voluntary mask mandate.

In addition, as Plaintiffs point out, only a fraction of students—less than one percent—are not currently complying with the Court's mask mandate. [Pls.' Resp. at 10]. The same is true for its staff members. Ms. Paquette testified that Farragut Intermediate has between 65 and 70 staff members. [Hr'g Tr. at 37:22–25]. If all 90 schools in Knox County have roughly the same number of staff members, then the 16 staff members who are not complying with the Court's

9

mask mandate equate to less than one percent of staff members overall. While the absence of these staff members might burden the Knox County Board of Education to a degree, the Court cannot conclude that it creates an *undue* burden—particularly in light of the fact that the Knox County Board of Education already has policies and procedures in place from last year to address acts of noncompliance. Indeed, the Knox County Board of Education does not claim that the absence of such a small number of staff members has rendered it unable to carry out its daily functions. It does not claim that it has had to cancel school. It does not claim that it has even had to cancel a single class. In sum, it musters no new evidence from which the Court can conclude that the mask mandate, as a reasonable accommodation for Plaintiffs and Class Plaintiffs, is in any way causing it to grapple with a burden of undue proportions. *See generally* H.R. Rep. No. 485, 101st Cong., 2d Sess., pt. II, at 69 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 351 ("[T]he fact that an accommodation is used by only one [person] should not be used as a negative factor counting in favor of a finding of undue hardship.").

### B. Clear Error of Law

Next, the Knox County Board of Education maintains that the Court committed a clear error of law by issuing a preliminary injunction, but it acknowledges, and rightfully so, that it has "a very high bar to meet" in establishing a clear error of law. [Knox Cty. Bd. of Educ.'s Mot. at 8]. This Court has previously stated that a finding of clear legal error requires the "application of incorrect law to the facts." *Kelley v. Apria Healthcare, LLC*, 232 F. Supp. 3d 983, 997 (E.D. Tenn. 2017) (citing *Kelso v. City of Toledo*, 77 F. App'x. 826, 832 (6th Cir. 2003)). Other district courts in this circuit have stated that a clear error of law requires "unique circumstances," like a court's "complete failure to address an issue or claim." *McBroom v. HR Dir. Franklin Cty. Bd. of Elections*, No. 2:12-CV-1074, 2019 WL 2373749, at *1 (S.D. Ohio June 5, 2019) (quotation

omitted). The Knox County Board of Education, however, does not contend that the Court applied incorrect law to the facts or that it failed to address an issue or claim. Instead, it argues that the Court clearly erred in entering a preliminary injunction because the Knox County Board of Education "has taken no action to bar or prevent Plaintiffs from accessing [their] buildings." [Knox Cty. Bd. of Educ.'s Mot. at 9].

But the Knox County Board of Education too casually describes the issue that was before the Court. The issue was not access to the schools in general but *safe* access in light of Plaintiffs' unique needs. As the Court stated in its memorandum opinion and order, "the Court's inquiry is whether the Knox County Board of Education—in light of the heightened lethality that COVID-19 poses to Plaintiffs because of their disabilities—has made reasonable modifications to its policies, practices, or procedures so that Plaintiffs can safely access Knox County's public schools." [Am. Mem. Op. & Order at 28]; *see* [Am. Compl. ¶ 54 (seeking "to *safely* attend school without increased risks of serious injury or even death, unlike their non-disabled peers" (emphasis in original))]. The evidence clearly demonstrated that the accommodations that the Knox County Board of Education had in place against COVID-19 were not reasonable because they were ineffective, [Am. Mem. Op. & Order at 29–33], and Rule 59(e) is not an apparatus by which it can now relitigate the reasonableness of those accommodations, *see Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) ("A motion under Rule 59(e) is not an opportunity to re-argue a case." (citation omitted)); *U.S. ex rel. Am. Textile Mfrs. Inst., Inc. v. Limited, Inc.*, 179 F.R.D. 541, 547 n.9 (S.D. Ohio 1998) ("FRCP 59(e) is not a means by which a party may re-litigate issues previously considered." (citations omitted)).

When considering ADA claims, federal courts have demonstrated concern over whether accommodations for the disabled are in fact safe. *Cf., e.g., Dickinson v. York*, 828 F. App'x 780,

11

781–82, 783–84 (2d Cir. 2020) (reversing summary judgment against a handicapped prisoner, who filed suit under the ADA and alleged that the prison's accommodation of a standard-issue uniform was unsafe because he could not wear it properly and loose material would get stuck in his wheelchair); *Medina-Rodriguez v. Fernandez Bakery, Inc.*, 255 F. Supp. 3d 334, 339, 343 (D. P.R. 2017) (declining to dismiss the plaintiff's ADA claim when the plaintiff alleged that, as a handicapped individual, he was unable to safely access a building because "barriers [to access] render[ed] the building unsafe," exposed him to moving traffic, and "depriv[ed] him 'of the meaningful choice of freely visiting the same accommodations readily available to the general public'"); *Polansky v. Wrenn*, Civil No. 12–cv–105–PB, 2012 WL 4748097, at *4 (D.N.H. Aug. 31, 2012) (stating that a handicapped inmate had "previously asserted a cognizable claim" under the ADA because he alleged that the prison's accommodation of a handicapped shower was "unsafe" without a safety alarm system).

The Knox County Board of Education, later on in its Rule 59(e) motion, ultimately does recognize that the issue is not whether Plaintiffs "can[] physically enter [the school] buildings" but whether "they are at heightened risk due to COVID-19" inside the school buildings. [Knox Cty. Bd. of Educ.'s Mot. at 10]. While conceding the correct issue, it argues that the ADA does not require it to "provid[e] a 100% safe environment for its students." [*Id.*]. Maybe so, but no one disputes this point. After all, Plaintiffs are not requesting a virus-*free* environment in their schools; rather, they are requesting a mask mandate to "mitigate the[] risk of" COVID-19, [Am. Compl. ¶ 37], and "mitigat[e] the transmission" of COVID-19, [Pls.' Mem., Doc. 9-1, at 12]. The ADA may not entitle Plaintiffs to a completely safe environment at school, but it certainly entitles them and Class Plaintiffs—in light of their unique needs—to an environment in which infections are not rising at a rate of 600 percent a day among their peers. *See Wright v. N.Y. State*

12

*Dep't of Corrs.*, 831 F.3d 64, 72 (2d Cir. 2016) ("The hallmark of a reasonable accommodation is effectiveness." (quotation omitted)); *see also U.S. Airways, Inc. v. Barnett,* 535 U.S. 391, 400 (2002) ("It is the word 'accommodation,' not the word 'reasonable,' that conveys the need for effectiveness."); *EEOC v. Ford Motor Co.*, 752 F.3d 634, 646 (6th Cir. 2014) (stating that an accommodation must be effective enough to "adequately address" a disabled individual's "unique needs")), *vacated en banc on other grounds*, 782 F.3d 783 (6th Cir. 2015).

Lastly, the Knox County Board of Education regurgitates its prior argument—one that the Court previously addressed in detail—that it is already providing Plaintiffs with a reasonable accommodation in the form of virtual schooling and that a mask mandate is therefore improper. [Knox Cty. Bd. of Educ.'s Mot. at 9]. According to the Knox County Board of Education, the Court "decided that Virtual Schools, despite being identical in all respects to . . . physical schools, were not a reasonable [alternative] accommodation because they do not allow for in person interaction between staff and students[.]" [*Id.* at 10]. In claiming that the Court clearly erred in reaching this decision, the Knox County Board of Education faults it for recognizing that virtual schooling does not provide Plaintiffs with "face-to-face interaction with peers." [*Id.*]. "[T]he ADA," the Knox County Board of Education claims, "does not require face-to-face services or settings." [*Id.*].

The Knox County Board of Education mischaracterizes the Court's ruling. First off, the Court never found that in-person schooling and virtual schooling are "identical in all respects." [*Id.* at 9]. Rather, the Court stated that "virtual schools mimic their brick-and-mortar schools" in some ways but "in other ways, virtual schools have obvious differences from their brick-and-mortar counterparts." [Am. Mem. Op. & Order at 36]. One of those differences is indeed that students enrolled in virtual schools are not physically present in the classroom with their teachers

13

and peers and do not have the opportunity to eat lunch with, go to physical education with, or engage in extracurricular activities with their peers. [*Id.*]; *see generally Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 756 (2017) (stating that Title II of the ADA "aim[s] to root out disability-based discrimination" by "enabling each covered person . . . to participate *equally* to all others in public facilities" (emphasis added)).

The Court, however, also homed in on other key differences between brick-and-mortar schools and virtual schools. For instance, the Court pointed out that students enrolled in virtual schooling in Knox County are "required to have a caregiver" present with them. [Am. Mem. Op. & Order at 37]. In a sworn statement, T.W.'s mother informed the Court that both she and her husband work, so they have to pay a caregiver to stay with T.W. because he cannot safely be in school. [T.W.'s Mother's Decl., Ex. 9-2, Doc. ¶ 6]. The fact that T.W.'s parents, and possibly other parents, have to pay caregivers to oversee their children so they can receive an education effectively converts their education from a free public education to a tuition-based education, the Court noted in its opinion. [Am. Mem. Op. & Order at 37]. And "perhaps most importantly in terms of a fact-specific analysis," the Court wrote, students enrolled in virtual schooling "are *still* required to enter their brick-and-mortar schools despite their status as virtually enrolled students because the state of Tennessee does not allow them to take state tests from home." [*Id.* at 37].

After pointing out all these differences, the Court did not go on to reach the sweeping conclusion that the Knox County Board of Education claims that it reached—i.e., that virtual schooling is per se "not a reasonable [alternative] accommodation." [Knox Cty. Bd. of Educ.'s Mot. at 10]. Rather, the Court concluded that "[a]ll this evidence, at a bare minimum, 'raise[s] questions going to the merits so serious, substantial, difficult, and doubtful as to make them fair grounds for litigation' on the issue of whether virtual schooling is a reasonable alternative

14

accommodation for Plaintiffs." [Am. Mem. Op. & Order at 37 (quoting *Six Clinics Holding Corp., II v. CAFCOMP Sys.*, 119 F.3d 393, 407 (6th Cir. 1997))]. Again, the Knox County Board of Education mischaracterizes the Court's ruling and gives short shirt to all the details of its ruling. In sum, it identifies no cognizable basis for relief under Rule 59(e), and the Court must therefore deny its motion.

## IV. CONCLUSION

The Knox County Board of Education's Amended and Restated Motion to Alter or Amend Judgment [Doc. 40] is **DENIED** to the extent that it contends it is suffering an undue burden and that the Court committed a clear error of law.

So ordered.

ENTER:

s/J. RONNIE GREER  
UNITED STATES DISTRICT JUDGE