RECEIVED
AUG 0 6 2021
Secretary of State
Tre Hargett



# STATE OF TENNESSEE
# EXECUTIVE ORDER
## BY THE GOVERNOR

### No. 83

### AN ORDER TO FACILITATE THE CONTINUED RESPONSE TO COVID-19

**WHEREAS,** hospitalizations are increasing as COVID-19 variants continue to increase positive case rates and burden the health care system; and

**WHEREAS,** the reinstatement of certain regulatory flexibilities is necessary to support adequate capacity within the health care system; and

**WHEREAS,** COVID-19 vaccines are widely available and effective, and widespread vaccination is the best tool to combat COVID-19 and ensure social, economic, and educational stability, and all eligible persons are strongly encouraged to get vaccinated against COVID-19.

**NOW THEREFORE,** I, Bill Lee, Governor of the State of Tennessee, in order to facilitate regulatory flexibility in the healthcare system, economic and other recovery, and maintenance of federal compliance and eligibility, do hereby declare and recognize a continuing state of emergency and hereby order the following:

1. <u>Out-of-state health care providers may practice in Tennessee.</u> The relevant provisions of Tennessee Code Annotated, Titles 63 and 68, and related rules are hereby suspended to the extent necessary to give the Commissioner of Health the discretion to allow a health care professional who is licensed in another state, and who would otherwise be subject to the licensing requirements under Title 63 or Title 68, to engage in the practice of such individual's profession in Tennessee, if such individual is a health care professional who is assisting in the medical response to COVID-19, including treating routine or other medical conditions. The Commissioner of Health shall provide the requisite form for practicing under this Paragraph on the Department of Health's Health Professional Boards webpage.

2. <u>Retired medical professionals can easily reenter the health care workforce.</u> The provisions of Tennessee Code Annotated, Titles 63 and 68, and related rules and policies are hereby suspended to the extent necessary to give the Commissioner of Health the authority to grant a license, certificate, or registration to a health care

professional, such as a retired health care professional, who has been out of practice for a period of time without requiring that individual to demonstrate continued competency or submit to an interview before a licensing board or other licensing authority, provided that the individual satisfies all other requirements for licensure, certification, or registration.

3. <u>Practical nursing graduates may practice under supervision without examination.</u> The provisions of Tennessee Code Annotated, Title 63, Chapters 6 and 7, and related rules and policies are hereby suspended to the extent necessary to give a health care institution licensed under Title 33 or 68, or an affiliate of the institution, the authority and discretion to employ a person who both has graduated from an approved school of practical nursing within the previous ninety (90) days and has received the person's first authorization to take the NCLEX-PN examination (referred to as a "graduate practical nurse"), subject to the following conditions:

   a. The graduate practical nurse's practice occurs in a health care institution licensed under Title 33 or 68, or an affiliate of the institution;

   b. The graduate practical nurse is at all times working under a supervisor licensed to practice professional nursing pursuant to Tennessee Code Annotated, Section 63-7-105. The graduate practical nurse's supervisor must be located in the same unit as the graduate practical nurse when the graduate practical nurse is working. The graduate practical nurse must provide the health care institution or affiliate of the institution in which they are practicing with:

      i. Proof of the first authorization to take the NCLEX-PN examination; and

      ii. Proof of graduation from an approved school of nursing within the previous ninety (90) days;

   c. A supervisor licensed to practice professional nursing pursuant to Tennessee Code Annotated, Section 63-7-105, is limited to supervising no more than one (1) graduate practical nurse at a time; and

   d. A graduate practical nurse is prohibited from:

      i. Being deemed a qualified licensed practical nurse pursuant to Tennessee Code Annotated, Section 63-7-108; and

      ii. Using another nursing title or identifying as a type of nurse other than a "graduate practical nurse" in a clinical setting.

4. <u>Medical professional staffing flexibility is permitted pursuant to an approved plan to relieve the capacity strain on certain staffing functions.</u> In order to relieve the capacity strain on bedside care and support resulting from staffing shortages (nurses, respiratory therapists, etc.), additional temporary regulatory flexibility measures are necessary to cope with the emergency. To this end, the provisions of Title 63 and Title 68, Chapter 140, are hereby suspended to the extent necessary to authorize professionals licensed under Title 63 or Title 68, Chapter 140, to perform tasks outside of their licensed scope of practice if such tasks are performed in a hospital licensed under Title 68 pursuant to a facility-specific, COVID-19-related plan of delegation that has been submitted by the facility's chief medical officer and approved by the Commissioner of Health or the Commissioner's designee. Such a plan of delegation must include the specific types of licensees covered, the specific tasks outside of their licensed scope of practice that are permitted, and the specific circumstances and directives under which such tasks are permitted. The Commissioner or the Commissioner's designee may approve such plan subject to conditions and may rescind such approval in the Commissioner's or Commissioner's designee's sole discretion. For purposes of regulation and disciplinary action, licensees performing tasks pursuant to this provision remain subject to regulation and disciplinary action as if they were acting within their licensed scope of practice.

5. <u>Behavioral health inpatient psychiatric, residential, and crisis care staffing flexibility is permitted pursuant to an approved plan to relieve the capacity strain on certain staffing functions.</u> In order to relieve the capacity strain on bedside care and support resulting from staffing shortages (physician assistants, nurse practitioners, registered nurses, licensed practical nurses, etc.), additional temporary regulatory flexibility measures are necessary to cope with the emergency. To this end, the provisions of Title 33, Title 63, and Title 68, Chapter 140, and related rules are hereby suspended to the extent necessary to authorize professionals licensed under Title 63 or Title 68, Chapter 140, to perform tasks outside of their licensed scope of practice or restricted under Title 33 if such tasks are performed in an inpatient psychiatric facility, in a behavioral health residential facility, or by a behavioral health crisis services provider licensed under Title 33 pursuant to a facility or provider-specific, COVID-19-related plan of delegation that has been submitted by the facility's or provider's chief medical or chief executive officer and jointly approved by the Commissioner of Mental Health and Substance Abuse Services or the Commissioner's designee and the Commissioner of Health or the Commissioner's designee. Such approval by either Commissioner or Commissioner's designee may be subject to conditions or may be subsequently rescinded in that person's sole discretion. Such a plan of delegation must include the specific types of licensees covered, the specific tasks outside of their licensed scope of practice or restricted under Title 33 that are permitted, and the specific circumstances and directives under which such tasks are permitted. For purposes of regulation and disciplinary action, licensees performing tasks pursuant to this provision remain subject to regulation and disciplinary action as if they were acting within their licensed scope of practice.

6. <u>Health care student staffing flexibility is permitted in inpatient acute care and rehabilitation and emergency settings pursuant to an approved plan to relieve the capacity strain on certain staffing functions.</u> In order to relieve the capacity strain on bedside care resulting from staffing shortages related to inpatient acute care, inpatient behavioral health, and emergency care, additional temporary regulatory flexibility measures are necessary to cope with the emergency. To this end, the provisions of Title 63 and Title 68, Chapter 140, and related rules are hereby suspended to the extent necessary to authorize students actively enrolled in a graduate school program or an undergraduate respiratory care program, the educational standards of which meet the training requirements for a license under Title 63 or Title 68, Chapter 140, to perform supervised tasks within the licensed scope of practice of such a license, if such tasks are performed in an inpatient acute care or inpatient rehabilitation setting or emergency department pursuant to a facility-specific, COVID-19-related plan of delegation that has been submitted by the facility's chief medical officer and approved by the Commissioner of Health or the Commissioner's designee. Such a plan of delegation must include the specific types of programs in which a student must be enrolled to perform tasks in accordance with this Paragraph 6, the specific tasks within the relevant scope of practice that the student is permitted to perform, and the specific circumstances and directives under which such tasks are permitted. The Commissioner or the Commissioner's designee may approve such plan subject to conditions and may rescind such approval in the Commissioner's or Commissioner's designee's sole discretion. Students performing tasks pursuant to this Paragraph 6 may be subject to disciplinary action upon applying for a license for actions inconsistent with the practice act for the licensed scope of practice in which they are operating.

7. <u>Health care student staffing flexibility is permitted in inpatient psychiatric and behavioral health settings pursuant to an approved plan to relieve the capacity strain on certain staffing functions.</u> In order to relieve the capacity strain on bedside care resulting from staffing shortages related to inpatient acute care, inpatient behavioral health, and emergency care, additional temporary regulatory flexibility measures are necessary to cope with the emergency. To this end, the provisions of Title 33, Title 63, and Title 68, Chapter 140, and related rules are hereby suspended to the extent necessary to authorize students actively enrolled in a graduate school program or an undergraduate respiratory care program, the educational standards of which meet the training requirements for a license under Title 63 or Title 68, Chapter 140, to perform supervised tasks within the licensed scope of practice of such a license or restricted under Title 33, if such tasks are performed in an inpatient psychiatric facility, in a behavioral health residential facility, or by a behavioral health crisis services provider licensed under Title 33 pursuant to a facility or provider-specific, COVID-19-related plan of delegation that has been submitted by the facility's or provider's chief medical or chief executive officer and jointly approved by the Commissioner of Mental Health and Substance Abuse Services or the Commissioner's designee and the Commissioner of Health or the Commissioner's designee. Such a plan of delegation must include the specific

types of programs in which a student must be enrolled to perform tasks in accordance with this Paragraph 7, the specific tasks within the relevant scope of practice or restricted under Title 33 that the student is permitted to perform, and the specific circumstances and directives under which such tasks are permitted. Such approval by either Commissioner or Commissioner's designee may be subject to conditions or may be subsequently rescinded in that person's sole discretion. Students performing tasks pursuant to this Paragraph 7 may be subject to disciplinary action upon applying for a license for actions inconsistent with the practice act for the licensed scope of practice in which they are operating.

8. <u>Discretion to utilize National Guard and State Guard members in connection with certain health care and emergency services operations</u>. This Paragraph 8 is issued for the limited purpose of authorizing personnel recognized under Tennessee Code Annotated, Sections 58-1-203, 58-1-204, and 58-1-402 (collectively, "Personnel"), to serve in certain health care and emergency services roles to reduce system capacity strain resulting from COVID-19. Namely, Personnel may: (1) perform authorized diagnostic testing for COVID-19 in health care settings, including but not to limited to hospitals, emergency departments, and alternate care sites (collectively, "Facilities"); (2) perform authorized nursing and other functions in Facilities; and (3) operate public or privately owned, permitted ambulance service vehicles with a licensed service. Accordingly, the following provisions are hereby suspended to the extent necessary to facilitate this Paragraph 8: Tennessee Code Annotated, Titles 63 and Title 68, and related rules, with respect to licensure, continuing education, and other requirements for Personnel or Facilities utilizing Personnel; Title 68, Chapter 140, Part 3, with respect to Personnel and licensed ambulance services utilizing Personnel; and any other state or local law, order, rule, or regulation that would limit the application of this Paragraph 8 is hereby suspended to the extent necessary to facilitate this Paragraph 8. This Paragraph 8 is subject to the following conditions:

   a. No Personnel shall operate under this Paragraph 8 unless designated by the Adjutant General upon request or order of the Governor;

   b. Personnel operating pursuant to this Paragraph 8 shall have the appropriate training or skills in the area(s) pertaining to their designations;

   c. The Adjutant General and Commissioner of Health, or their designees, shall determine the Facilities to which Personnel are assigned, based on need and other reasonable factors, in their sole discretion;

   d. Any Facility to which Personnel are assigned must submit, in writing to the Commissioner of Health, the responsibilities and tasks that Personnel will be undertaking while operating pursuant to this Paragraph 8;

   e. A list of Personnel designated to operate under this Paragraph 8 and the Facility or setting in which such Personnel will be operating shall be

    provided to the Commissioner of Health by the Adjutant General, and this list shall be updated from time to time as necessary;

  f. Any authority, duties, or scope of practice suspensions extended to Personnel pursuant to this Paragraph 8 shall terminate and be of no further force and effect upon the expiration or termination of Paragraph 8 or other order of the Governor to that effect; and

  g. This Paragraph 8 shall not affect the requirements and provisions of the suspended statutory and rule provisions with respect to any other person or facility.

9. <u>Regulatory flexibility for ambulance transport services</u>. In order to relieve the capacity strain on emergency medical services, temporary regulatory flexibility measures are necessary for nonemergency ambulance transport services. To this end, the provisions of Tennessee Code Annotated, Title 68, Chapter 140, and Tenn. Comp. R. & Reg. 1200-12-01-.14(3)(c)(2)(i), (ii), (iii), & (iv) are hereby suspended to the extent necessary to authorize that Level 1 and Level 2 transports may be staffed with one (1) Paramedic, Level 3 transports may be staffed with one (1) AEMT, and Level 4 transports may be staffed with one (1) EMT, provided that there is an ambulance operator in addition to the Paramedic, AEMT, or EMT who satisfies the ambulance driver requirements of Tenn. Comp. R. & Reg. 1200-12-01-.10, as may otherwise be modified by this Order. Medical Directors of ambulance services providing patient care under this provision must submit a Plan of Delegation to be approved by the Commissioner of Health or the Commissioner's designee. All other statutes and rules regarding patient transport services remain in full force and effect.

10. <u>Regulatory flexibility for ambulance driver qualifications.</u> In order to relieve the capacity strain on emergency medical services, temporary regulatory flexibility measures are necessary for ambulance driver qualifications. To this end, the provisions of Tennessee Code Annotated, Title 68, Chapter 140, and Tenn. Comp. R. & Reg. 1200-12-01-.10(1) & (2) are hereby suspended to the extent necessary to authorize that vehicle operators must be eighteen (18) years of age or older, must possess either a Class D or a Class F driver license, and must possess at least one (1) year of driving experience. Additionally, drivers must successfully complete an emergency vehicle operations class. All other statutes and rules regarding driver qualifications remain in full force and effect.

11. <u>Designation and Payment for Certain Nursing Facilities as "COVID-19 Skilled Nursing Facilities/Units."</u> The provisions of Tennessee Code Annotated, Titles 4, 68, and 71 and related rules, regulations, and policies are hereby suspended to the extent necessary to provide the Department of Health and the Division of TennCare the necessary authority and discretion to select, designate, and reimburse certain nursing facilities, or units within certain nursing facilities, as "COVID-19 Skilled Nursing Facilities/Units."

12. <u>Medicaid Payments to "COVID-19 Skilled Nursing Facilities/Units."</u> The provisions and requirements of Tennessee Code Annotated, Section 71-5-105, are hereby suspended to the extent necessary to permit the Division of TennCare to implement additional acuity-based payments for Medicaid members in nursing facilities designated as "COVID-19 Skilled Nursing Facilities/Units".

13. <u>Increased number of hospital beds available for COVID-19 patients</u>. The provisions of Tennessee Code Annotated, Section 68-11-1607, are hereby suspended to the extent necessary to allow hospitals, nursing homes, and home health agencies that would otherwise be subject to certificate of need requirements to temporarily increase their number of licensed hospital beds at any location or temporarily establish hospital, nursing home, home-based, and diagnostic services at any location, if necessary for the treatment of COVID-19 patients, as well as to the extent necessary to facilitate activity authorized by the provisions of this Order and any subsequent order concerning COVID-19.

14. <u>Telephone assessments for involuntary commitment cases are permitted.</u> The provisions of Tennessee Code Annotated, Section 33-4-108, are hereby suspended to the extent necessary to allow the issuance of a certificate of need under Tennessee Code Annotated, Section 33-6-404, for the emergency involuntary commitment of a person with a mental illness or serious emotional disturbance based upon a telephone assessment of such person by a mandatory pre-screening agent designated pursuant to Tennessee Code Annotated, Sections 33-6-104 and 33-6-427, if the following conditions are met:

    a. The mandatory pre-screening agent is not reasonably able to conduct an evaluation in-person or via readily available telehealth services; and

    b. The mandatory pre-screening agent determines in the agent's professional judgment that conducting the assessment via telephone with the person is clinically appropriate.

15. <u>Testing for COVID-19 can occur at more medical laboratory facilities.</u> The provisions of Tenn. Comp. R. & Regs. 1200-06-03-.16 are suspended to allow testing necessary for the diagnosis, treatment, and containment of COVID-19 to occur at alternate testing sites without prior approval by the Medical Laboratory Board; provided, that laboratories shall notify the Medical Laboratory Board of any such alternate testing sites.

16. <u>Medical laboratory directors can monitor facilities remotely.</u> The provisions of Tenn. Comp. R. & Regs. 1200-06-01-.20(5)(c) are hereby suspended to the extent necessary to suspend the requirement that a medical laboratory director make certain periodic in-person, onsite visits to the facilities the director oversees, so long as the director utilizes other technological means of maintaining and exercising oversight.

17. <u>Medical laboratory personnel can work remotely.</u> The provisions of Tenn. Comp. R. & Regs. 1200-06-03-.02(1)(b) are hereby suspended to allow medical laboratory personnel to remotely review electronic data and report laboratory results without having a separate laboratory license for each remote location. Such personnel must be employed by a licensed medical laboratory and working under the supervision of a laboratory director. This suspension does not otherwise alter or amend any licensee's scope of practice or recordkeeping requirements.

18. <u>Temporary quarantine and isolation facilities may be constructed.</u> The provisions of Tennessee Code Annotated, Section 68-11-202(c)(1)-(8), are hereby suspended to allow for the construction of temporary structures, the plans for which would otherwise be subject to review for new construction, additions, or substantial alterations, as directed by the Commissioner of Health and the Director of TEMA in response to COVID-19; provided, that there shall be inspections of such structures to ensure safety, as necessary.

19. <u>Inspections of mental health and substance abuse facilities and services are suspended.</u> The provisions of Tennessee Code Annotated, Section 33-2-413(a), are hereby suspended to the extent necessary to give the Commissioner of Mental Health and Substance Abuse Services the authority to suspend the required unannounced life safety and environmental inspections of licensed services or facilities, absent the death of a service recipient at the service or facility with an indication of possible abuse or neglect by the service or facility or its employees or a request for placement assistance from law enforcement or state or federal agencies regarding the service or facility.

20. <u>Health care licensing inspections and investigations are suspended to increases resources available to fight COVID-19 and to protect public health.</u> The provisions of Tennessee Code Annotated, Titles 63 and 68, and related rules and policies are hereby suspended to the extent necessary to suspend any requirement that the Department of Health conduct inspections or investigations of a licensee, including, but not limited to, complaint investigations, routine surveys, and site visits. However, the Department of Health retains the authority to conduct any inspection or investigation when, in the Department's sole discretion, the public health, safety, or welfare necessitates such inspection or investigation.

21. <u>Inspections of health care facilities are suspended.</u> The provisions of Tennessee Code Annotated, Section 68-11-210(a)(1), are hereby suspended to the extent necessary to suspend the requirement that the Department of Health conduct inspections of facilities applying for licensure if the applicant facility is physically located in the same location as another licensed facility where patients have been seen within the thirty (30) days preceding the submission of the application. In instances where the Department of Health elects to not inspect a facility applying for licensure, such provisions requiring a facility applying for licensure to be inspected are hereby suspended.

This Order takes effect at 11:59 p.m., Central Time, on August 6, 2021, and shall remain in effect until 11:59 p.m., Central Time, on October 5, 2021. This Order supersedes Executive Order No. 82, dated July 30, 2021, which is hereby repealed.

**IN WITNESS WHEREOF,** I have subscribed my signature and caused the Great Seal of the State of Tennessee to be affixed this 6th day of August, 2021.

_____
GOVERNOR

ATTEST:

_____
SECRETARY OF STATE