UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| S.B., a minor student, by and through his parents, M.B. and L.H. *et al.*, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) No. 3:21-CV-00317-JRG-DCP ) |
| GOVERNOR BILL LEE, in his official capacity as Governor of Tennessee | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Proposed Intervenors' Objection to the Order Filed on April 27, 2022, Pursuant to Federal Rule of Civil Procedure 46; and Motion to Alter or Amend Pursuant to Federal Rule of Civil Procedure 59 [Doc. 139], Proposed Intervenors' Memorandum in Support [Doc. 140], Plaintiffs' Response [Doc. 141], and Proposed Intervenors' Reply [Doc. 142]. For the reasons herein, the Court will deny Proposed Intervenors' motion.

### I. BACKGROUND

On August 16, 2021, the Governor of Tennessee, Bill Lee, issued Executive Order No. 84, which states:

> I, Bill Lee, Governor of the State of Tennessee, having declared a continuing state of emergency by Executive Order No. 83, dated August 6, 2021, and by virtue of the power and authority vested in me by the Tennessee Constitution and other applicable law including Tennessee Code Annotated § 58-2-107, do hereby order that a student's parent or guardian shall have the right to opt out of any order or requirement for a student in kindergarten through twelfth-grade to wear a face covering at school, on a school bus, or at school functions, by affirmatively notifying in writing the local education agency or personnel at the student's school.

[Executive Order No. 84, Doc. 23]. Not long afterwards, the Knox County Board of Education, in response to the ongoing COVID-19 pandemic, met on September 1, 2021, to discuss and vote

on a district-wide mask mandate for its school system, [Am. Compl., Doc. 7, ¶ 52],[1] which consists of ninety schools and 60,000 students, [Hr'g Tr. at 179:24–25, 180:1–6 (on file with the Court)].[2] Approximately 8,000 of those students are disabled. [*Id.* at 180:7–14]. By vote of the board, a mask mandate had been in effect during the entirety of the previous school year, from August 2020 to May 2021, for all ninety schools. [*Id.* at 206:15–25]. But this year, during the board's meeting on September 1, 2021, it decided not to renew the mask mandate by a vote of 5 to 4, [Am. Compl. ¶ 54]—acting at odds with the guidelines of the Knox County Health Department, the American Academy of Pediatrics, and the Centers for Disease Control and Prevention ("CDC"), all of which recommend masks for all students enrolled in kindergarten through twelfth grade, [Dr. Yaun Decl., Doc. 9-3, ¶ 12; Hr'g Tr. at 55:21–25, 56:1, 69:5–7].[3]

In response to the board's vote, Plaintiffs, on the following day, brought a class-action lawsuit in this Court under Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131 *et seq.*, and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, claiming they are "unable to *safely* attend school without increased risks of serious injury or even death, unlike their non-disabled peers." [Am. Compl. ¶ 54 (emphasis in original)]. Plaintiffs allege that they suffer from underlying medical conditions that expose them to a likelihood of severe illness or death from COVID-19, a highly transmissible and sometimes deadly virus that invades the body through the mouth, nose, and eyes and spreads through respiratory droplets that persons

---

[1] Plaintiffs' amended complaint is verified under 28 U.S.C. § 1746, *see El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (noting that a "verified complaint" is one that is signed under the penalty of perjury under 28 U.S.C. § 1746), and the Court may therefore rely on it as evidence, *see Barron v. PGA Tour, Inc.*, 670 F. Supp. 2d 674, 677 n.3 (W.D. Tenn. 2009) (stating that "the court may rely on facts contained in affidavits and verified complaints in deciding whether to issue a temporary restraining order or preliminary injunction" (citing Fed. R. Civ. P. 65(b)(1)(A))).
[2] The Court has relied on an uncertified copy of the transcript, which it received from the court reporter immediately after the evidentiary hearing. It does not exactly match the line numbers and page numbers in the certified copy of the transcript that was recently filed in the record. The two copies are otherwise consistent with each other.
[3] On August 11, 2021, the Knox County Board of Health recommended masking indoors regardless of vaccination status. [Hr'g Tr. at 69:5–7].

2

Case 3:21-cv-00317-JRG-DCP   Document 146   Filed 06/21/22   Page 2 of 13   PageID #: 2151

produce by speaking, coughing, or sneezing. [Hr'g Tr. at 51:2–25, 52:1–6, 103:8–9]. Children under the age of twelve are not yet eligible to receive COVID-19 vaccines, and some children who are old enough to receive the vaccines may have medical conditions that do not allow their immune systems to sufficiently respond to them. [Dr. Yaun Decl. ¶¶ 21–22].

A ten-year-old fourth grader, Plaintiff T.W. has only one heart ventricle, a congenital defect that impairs his cardiovascular and immune functions, and he also suffers from epilepsy. [Am. Compl. ¶¶ 25–26]. He has undergone multiple open-heart surgeries. [*Id.* ¶¶ 25– 26]. A twelve-year-old sixth grader, Plaintiff M.S. suffers from "Joubert Syndrome, a rare genetic disorder involving brain malformation" that results in cognitive impairments. [*Id.* ¶¶ 22–24]. She is confined to a wheelchair. [*Id.* ¶ 24]. An eight-year-old second grader, Plaintiff S.B. suffers from chronic lung disease, Eosinophilic Esophagitis (a chronic immune-system disease of the esophagus), autoimmune disease, and autism. [*Id.* ¶¶ 19–21]. An eleven-year-old sixth grader, Plaintiff M.K. has asthma and is on the Knox County School System's "Asthma Action Plan," an emergency plan. [*Id.* ¶¶ 27–28]. All Plaintiffs are zoned within the public school system of the Knox County Schools. [*Id.* ¶¶ 3, 6, 9, 12].

Plaintiffs claim that the Knox County Board of Education has violated the ADA and the Rehabilitation Act by not providing them with a reasonable accommodation that would enable them—against the backdrop of the COVID-19 pandemic—to have safe and "fundamental *access* to the school building itself." [*Id.* ¶ 55 (emphasis in original)]. Specifically, Plaintiffs cite an "urgent need" for a mask mandate inside Knox County Schools and allege the reasonable accommodation "being sought in this case is *community masking: protection of selves and others.*" [*Id.* ¶¶ 40, 51 (emphasis in original)]. According to Plaintiffs, the Knox County Board of Education's rejection of a mask mandate is placing them at an "increased risk of serious injury

3

or death by not allowing a simple reasonable modification under the ADA and Rehabilitation Act." [*Id.* ¶ 60]. In addition, Plaintiffs claim that Governor Lee has violated the ADA and the Rehabilitation Act because, by promulgating Executive Order No. 84, he denied the Knox County Board of Education "the ability to provide the children with disabilities in the instant matter with the protections they need to attend school safely." [*Id.* ¶ 68].

Plaintiffs filed suit on behalf of all "current and future K-12 students" who are "eligible to attend public school in Knox County, Tennessee, during the coronavirus pandemic," who are unable to receive the vaccine or unable to mount an adequate immune response to the vaccine, and who suffer from one or more of the following medical conditions:

> (a) lung disease, including asthma, chronic obstructive pulmonary disease (*e.g.*, bronchitis or emphysema), or other chronic conditions associated with impaired lung function;
> (b) heart disease, such as congenital heart disease, congestive heart failure and/or coronary artery disease;
> (c) chronic liver or kidney disease (including hepatitis and dialysis patients);
> (d) diabetes or other endocrine disorders;
> (e) hypertension;
> (f) compromised immune systems (such as from cancer, HIV, receipt of an organ or bone marrow transplant, as a side effect of medication, or other autoimmune disease);
> (g) blood disorders (including sickle cell disease);
> (h) inherited metabolic disorders;
> (i) history of stroke;
> (j) neurological or developmental disability (including epilepsy);
> (k) cancer or cancer treatments; and/or
> (l) muscular dystrophy or spinal cord injury.

[*Id.* ¶ 58; *see* Dr. Yaun Decl. ¶ 18 (stating that children with these medical conditions are "more likely to face severe symptoms, require hospitalization, and potentially die" from COVID-19)].

4

Case 3:21-cv-00317-JRG-DCP   Document 146   Filed 06/21/22   Page 4 of 13   PageID #: 2153

Plaintiffs also moved the Court to issue a preliminary injunction[4] that "requir[es] Knox County Board of Education to enforce a mask mandate" and that "enjoin[s] Governor Lee during this litigation from enforcing Executive Order No. 84." [Am. Compl. ¶ 77].[5] The Court ultimately granted Plaintiffs' motion for a preliminary injunction and ordered the Knox County Board of Education to enforce—with immediate effect—the mask mandate that was in place in all Knox County Schools during the 2020-2021 school year, as a reasonable accommodation under the ADA for Plaintiffs and Class Plaintiffs. [Am. Mem. Op. & Order, Doc. 48, at 56]. The Court, however, granted the Knox County Board of Education leave to approve exemptions to the mask mandate under Policy C-240 [Doc. 36-2], which it created and put into effect during the 2020-2021 school year.

A few weeks ago, Plaintiffs and the Knox County Board of Education entered into a settlement agreement [Doc. 131-1],[6] and they jointly moved the Court, under Federal Rule of Civil Procedure 21, for dismissal with prejudice of Plaintiffs' claims against the Knox County Board Education, [Joint Mot. Dismiss, Doc. 131]. The Court granted their Rule 21 motion to dismiss, [Order of Dismissal, Doc. 133], and in doing so, it denied as moot the recently filed motion to intervene [Doc. 115] of M.M., E.M., D.M.,[7] who are students in Knox County's schools. Under Federal Rule of Civil Procedure 46, they now object to the Court's denial of

---

[4] In a class-action lawsuit, the Court has license to issue a class-wide preliminary injunction before ruling on class certification. *See Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 433 (6th Cir. 2012) ("[T]here is nothing improper about a preliminary injunction preceding a ruling on class certification.").

[5] Plaintiffs' amended complaint is misnumbered between pages sixteen and eighteen.

[6] Although Defendant Governor Bill Lee was also a participant in settlement negotiations with Plaintiffs, he was unable to reach a settlement agreement with them, and his motion to dismiss [Doc. 90] remains pending. Plaintiffs have countered his motion with a motion for summary judgment [Doc. 132], which is not yet ripe for consideration.

[7] M.M., E.M., and D.M. sought to intervene as a matter of right under Federal Rule of Civil Procedure 24(a), which, "[o]n a timely motion," permits intervention when a party (1) "is given an unconditional right to intervene by a federal statute" or (2) "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(1)–(2).

their motion to intervene as moot, and under Federal Rule of Civil Procedure 59(e), they move the Court to alter or amend its judgment by restoring their motion to its active docket.

## II. LEGAL STANDARD

Rule 59(e) states that a party may file a motion to alter or amend a judgment within twenty-eight days of its entry, and it permits a court to alter a judgment based on "(1) a clear error in law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010) (quotation omitted). A motion under Rule 59(e), however, "run[s] contrary" to notions of "finality and repose," and it is therefore "generally discouraged" and "afford[s] relief only under extraordinary circumstances." *Polzin v. Barna & Co.*, No. 3:07-cv-127, 2007 WL 4365760, at *3 (E.D. Tenn. Dec. 11, 2007). A district court has "considerable discretion" in deciding whether to grant a motion under Rule 59(e). *Leisure Caviar*, 616 F.3d at 615 (citation omitted).

## III. ANALYSIS

In moving the Court to alter or amend its judgment under Rule 59(e), M.M., E.M., D.M., the proposed intervenors, do not cite any of the four bases for relief—i.e., a clear error in law, newly discovered evidence, an intervening change in the law, or a need to prevent manifest injustice—as grounds for their motion. They leave to Court to presume that they believe it committed clear error when it denied their motion to intervene as moot because they maintain that their motion "is not moot" and that "[s]ometimes intervention can occur even after a final judgment." [Proposed Intervenors' Mem. at 3]. In contending that a proposed intervenor can sometimes intervene in a case even after a court has entered a final judgment, they cite *United*

6

*Airlines, Inc. v. McDonald*, 432 U.S. 385 (1977) and *Horn v. Eltra, Corp.*, 686 F.2d 439 (6th Cir. 1982). [Proposed Intervenors' Mot. Recons. at 1; Proposed Intervenors' Mem. at 3–4].

Neither of these cases even remotely establishes that the Court committed a clear error in law[8] by denying M.M., E.M., D.M.'s motion to intervene as moot. In *McDonald*, the issue was not whether the motion to intervene was moot but whether it was *timely* after the would-be intervenor, who requested "post-judgment intervention for the purpose of appeal," filed it subsequent to the district court's order of dismissal. *See McDonald*, 432 U.S. at 387, 395 ("The question presented is whether this motion was 'timely' under Rule 24." (footnote omitted)).[9] And in *Horn*, the "civil action was dismissed with prejudice pursuant to a settlement between" the parties, and the district court, following the dismissal, revoked a third party's status as an intervenor in the case. *Horn*, 686 F.2d at 440. The issue was whether "the settlement of [the plaintiff's] basic claim now renders moot the present appeal which seeks the reinstatement of the [third party] as an intervenor in [the] lawsuit." *Id.* The Sixth Circuit held that the appeal was moot. *Id.* at 442. So, in short, neither *McDonald* nor *Horn* supports M.M., E.M., D.M.'s contention that this Court clearly erred when it denied their motion to intervene as moot, and their reliance on *Horn* actually harms their position.

As a general rule, an existing suit is "a prerequisite to the 'ancillary proceeding' of an intervention," and an "[i]ntervention," therefore, "must 'abide the fate of that suit.'" *Vill. of Oakwood v. State Bank & Trust Co.*, 481 F.3d 364, 367 (6th Cir. 2007) (quoting *United States ex rel. Tex. Portland Cement Co. v. McCord*, 233 U.S. 157, 163–64 (1914))). In this vein, the

---

[8] "The term 'clear error' is not well-defined in the Sixth Circuit, but it does 'clearly indicate[] that a high standard applies.'" *Forman v. Meridian Bioscience, Inc.*, 387 F. Supp. 3d 791, 796 (S.D. Ohio 2019) (alteration in original) (quotation omitted).

[9] Under Rule 24(a), "[t]imeliness is to be determined from all the circumstances," and "the point to which [a] suit has progressed is . . . not solely dispositive." *Cameron v. EMW Women's Surgical Ctr.*, 142 S. Ct. 1002, 1012 (2022) (alterations in original) (quotation omitted).

7

Sixth Circuit—in addition to a host of other circuit courts and district courts—has held that a non-conditional order of dismissal, when arising from a stipulation of dismissal, moots a motion to intervene. *See, e.g.*, *Salem Pointe Capital, LLC v. BEP Rarity Bay, LLC*, 854 F. App'x 688, 704, 706 (6th Cir. 2021) ("[T]he Rule 41(a)(1)(ii) stipulation of dismissal divested the district court of jurisdiction to consider [the] second motion to intervene. . . . The district court thus appropriately found the motion to intervene to be moot by virtue of that stipulation."); *Kruse v. Wells Fargo Home Mortg., Inc.,* No. 02 CV 3089, 2006 WL 1212512, at *9 (E.D.N.Y. May 3, 2006) ("Since the original named plaintiffs [sic] claims are moot, and it would be improper to permit intervention to 'breath[e] life into a non-existent lawsuit,' the case is dismissed with prejudice." (quotation omitted)); *Mut. Produce, Inc. v. Penn Cent. Transp. Co.*, 119 F.R.D. 619, 620–21 (D. Mass. 1988) ("[T]he plaintiffs and defendants together have sought to dismiss their cases under [Rule] 41(a)(1)(ii) . . . . Because the stipulations of dismissal were effective when filed, there is no action in which to intervene and the motions to intervene are moot." (citation omitted)); *Nance v. Jackson*, 56 F.R.D. 463, 471 (M.D. Ala. 1972) ("An alternative ground for denying the petition to intervene is that, by virtue of this Court's disposition, *infra*, of [the plaintiffs'] motion for voluntary dismissal, there is no justiciable action pending in which to intervene."); *cf. Nat'l Bulk Carriers, Inc. v. Princess Mgmt.*, 597 F.2d 819, 825 n.13 (2d Cir. 1979) (ruling that a motion to intervene was moot after affirming the district court's judgment in the underlying suit).

This Court has previously recognized that Rule 21, the rule under which it dismissed the claims against the Knox County Board of Education, is an analog to Rule 41,[10] in that it has the

---

[10] While "Rule 41(a)(1)(ii) is self-executing and does not require judicial approval," *Green v. Nevers*, 111 F.3d 1296, 1301 (6th Cir. 1997) (quotation omitted), the Court is unaware of any authority stating that Rule 21 is

8

Case 3:21-cv-00317-JRG-DCP   Document 146   Filed 06/21/22   Page 8 of 13   PageID #: 2157

same effect as Rule 41 but applies in a different circumstance—that is, in a case like this one, in which the plaintiff agrees to the dismissal of the claims against one defendant but not to the dismissal of the entire action against all defendants:

> Rule 21 provides that "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." In contrast, Rule 41 provides for dismissal of an entire action.
>     . . . .
>
> [A]pplication of Rule 41, versus Rule 21, would make little functional difference in this instance. Indeed, if the Court chose to apply Rule 41 in this case, the result would be the same.

*Wilkerson v. Brakebill*, No. 3:15-CV-435-TAV-CCS, 2017 WL 401212, at *2 (E.D. Tenn. Jan. 30, 2017) (first alteration in original) (quoting Fed. R. Civ. P. 21); *see Howard v. 21st Mortg. Corp.*, No. 5:18-cv-613-JMH, 2019 WL 638365, at *1 (E.D. Ky. Feb. 14, 2009) ("[B]ecause dismissal of claims against a single party is not appropriate under Federal Rule of Civil Procedure 41, the Court construes the notice of dismissal and motion to dismiss under Rule 41 as motions to dismiss under Rule 21."); *see also Henderson-Thompson v. Jardoin*, No. 2:22-cv-2013, 2022 WL 349896, at *1–2 (W.D. Tenn. Feb. 4, 2022) ("Rule 41(a), however, does not permit a court to dismiss some, but not all, defendants in a single case. . . . Consequently, the Court will construe the parties' Stipulation under Rule 41(a) as a motion to dismiss a party under Rule 21." (citation omitted)).

Most importantly, the Court's dismissal of the claims against the Knox County Board of Education was non-conditional, i.e., "there was no condition subsequent that had to occur for the settlement to be consummated." *Salem Pointe Capital*, 854 F. App'x at 706; *see Midwest Realty*

---

likewise self-executing, and the Court therefore entered an order of dismissal in response to Plaintiffs' and the Knox County Board of Education's joint motion for dismissal.

9

*Mgmt. Co. v. City of Beavercreek*, 93 F. App'x 782, 784 (6th Cir. 2004) (determining that the district court had entered a conditional order of dismissal when it retained jurisdiction "to reopen the case on motion of any party for good cause shown"). In this vein, the Court, in dismissing these claims with prejudice, did not state it was retaining jurisdiction over them. *See* [Order of Dismissal at 1]. The Court, therefore, did not commit clear legal error by denying M.M., E.M., D.M.'s motion to intervene as moot because its non-conditional order of dismissal divested it of jurisdiction over their motion. *Salem Pointe Capital*, 854 F. App'x at 704, 706.

M.M., E.M., D.M., however, point out that the Court's order of dismissal did not affect the claims against Governor Lee and these claims still require the Court's adjudication. In their view, the outstanding claims against Governor Lee raise "an extant issue" that entitles them to pursue intervention. [Proposed Intervenors' Mem. at 5]. They contend that "[i]f Governor Lee definitively states he will not reissue Executive Order 84, then [they] have a right to take up the mantle in his stead to argue why there should be no permanent injunction against a Tennessee Governor seeking to protect the civil liberties afforded to the citizens of his state." [*Id.* at 6]. But this contention is disingenuous, because *nowhere* in their motion to intervene or accompanying memorandum do they even mention Executive Order 84, let alone communicate an interest in intervening in Plaintiffs' claim relating to Executive Order 84.[11] Instead, they express an interest in intervening *only* so they can challenge the Court's mask mandate, by arguing that it is illegal under the ADA,[12] that it violates various statutes and constitutional amendments, and that masks are ineffective in slowing and preventing the spread of COVID-19:

---

[11] M.M., E.M., and D.M. do not mention Governor Lee's name either, except to refer to him in an introductory paragraph and in a recitation of the case's facts. [Proposed Intervenors' Mem., Doc. 116, at 2, 3].

[12] Incidentally, the Knox County Board of Education challenged the legality of the Court's mask mandate under the ADA, and in doing so, it moved for a stay of the mask mandate pending the appeal's outcome. The Sixth Circuit, however, declined to stay the mask mandate after concluding that the Knox County Board of Education was unlikely to succeed on the merits of its appeal. [Sixth Circuit Order, Doc. 83, at 5].

- "Intervenors will challenge the use of community masking as a reasonable accommodation, because community masking is ineffective in preventing the transmission or acquisition of viral respiratory illnesses." [Proposed Intervenors' Mem. Supporting Mot. to Intervene, Doc. 116, at 17–18].

- "Intervenors have an interest in the most basic biological function, respiration, remaining unmolested by government mandates. This lawsuit implicates the most basic of personal liberties—whether a person can breathe air freely, unmolested and unimpeded by a mask of any type." [*Id.* at 13].

- "Intervenors' substantial interest can be cast in a number of different ways, including: 1) Intervenors have a Fourth Amendment right to be secure in their persons and a right against an unreasonable seizure of their body; 2) Intervenors have a 13th Amendment right against involuntary servitude of wearing a mask 6+ hours per day, five days per week, for someone else's benefit, which is a form of labor; 3) Intervenors have a 14th Amendment substantive due process right of bodily autonomy against the government restricting their breathing, and there is no governmental interest compelling enough in these circumstances to interfere with this most basic biological function." [*Id.*].

- "The only basis for using a face mask or cloth face covering over the mouth and nose as source control is the April 24, 2020 letter from the FDA granting Emergency Use Authorization pursuant to 21 U.S.C. § 360bbb-3(b)(1)." [*Id.* at 14].

- "Proposed intervenors are forced to subvert their multiple constitutional rights against government interfering with their respiration, in order to exercise their right to a public education." [*Id.* at 15–16].

- "Proposed Intervenors will present legal argument that the ADA was never intended to grant the type of remedy that Plaintiffs seek." [*Id.* at 18].

- "Community masking is an ineffective intervention to transmission and acquisition to viral respiratory disease." [*Id.* at 19].

- "[M]ask mandates have no impact on the transmission of Covid-19." [*Id.* at 20].

- "[The ADA and § 504], although remedial, were never intended to reach as far as Plaintiffs seek to take them." [*Id.* at 21].

- "[Plaintiffs] seek to have the [Knox County Board of Education] change its policy, forcing every child, teacher, and staff member to breathe through

- some type of mask for the purpose of filtering out viruses. What the Plaintiffs seek is far beyond the contemplation of Congress, when it expressly described the types of barriers that the ADA sought to overcome, namely architectural, transportation, and communication barriers." [*Id.* at 24].

- "The proposed Intervenors also will argue that they should not be subject to the administration of medical devices, i.e. surgical masks, for which the FDA has declared are not fit for the use proposed by Plaintiffs." [*Id.*].

The Court's mask mandate, however, is defunct, with the Court having dissolved its preliminary injunction when it unconditionally dismissed with prejudice the claims against the Knox County Board of Education. [Order of Dismissal at 1]. The Court therefore is without jurisdiction over these claims, and by extension, it is without jurisdiction over M.M., E.M., and D.M.'s motion to intervene in relation to them. *Salem Pointe,* 854 F. App'x 688 at 704; *see Hinsdale v. Farmers Nat'l Bank & Trust Co.*, 823 F.2d 993, 995–96 (6th Cir. 1987) (stating that the district court's "unconditional dismissal with prejudice terminated the district court's jurisdiction" (internal quotation mark and quotation omitted)); *Waite, Schneider, Bayless & Chelsey Co. v. Davis*, 191 F. Supp. 3d 743, 748 (S.D. Ohio 2016) ("The settlement agreement here did not grant me continuing jurisdiction to resolve disputes over its implementation," and "[a]ccordingly, the stipulated dismissal with prejudice deprived me of jurisdiction to act *vis-à-vis* the settlement and its *corpus*." (footnote omitted) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994))).

In this litigation, the remaining dispositive issue before the Court is whether Plaintiffs' claims against Governor Lee are moot in light of the fact that, last year, he opted not to renew Executive Order 84, which is now no longer in force or existence. *See* [Governor Lee's Mot. Dismiss, Doc. 90, at 1; Pls.' Mot. Summ. J., Doc. 132, at 1–2]. But again, M.M., E.M., and D.M., in their motion to intervene and in their accompanying memorandum, express no appreciable interest in intervening in Plaintiffs' claim relating to Executive Order 84, and to the extent they

now argue, for the first time in their Rule 59(e) motion, that they do have such an interest, the Court lacks license to consider their belated argument. *See Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) ("[P]arties should not use [a motion under Rule 59(e)] to raise arguments which could, and should, have been made before judgment issued." (quotation omitted)). In sum, M.M., E.M., and D.M. fail to show that this Court committed clear error when it denied their motion to intervene as moot.

## IV. CONCLUSION

M.M., E.M., and D.M. fail to meet their heavy burden as movants under Rule 59(e), and their motion to alter or amend judgment [Doc. 139] is therefore **DENIED**.

So ordered.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
