UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

S.B., a minor student, by and through his parents,  )
M.B. and L.H. *et al.*,                            )
                                                    )
            Plaintiffs,                             )
                                                    )
v.                                                  )        No. 3:21-CV-00317-JRG-DCP
                                                    )
GOVERNOR BILL LEE, in his official capacity         )
as Governor of Tennessee,                           )
                                                    )
            Defendant.                              )

## MEMORANDUM OPINION

This matter is before the Court on United States Magistrate Judge Debra C. Poplin's Report and Recommendation [Doc. 165], Defendant' Governor Bill Lee's Objections to the Report and Recommendation [Doc. 166], and Plaintiffs' Response [Doc. 167]. For the reasons herein, the Court will sustain in part and overrule in part Governor Lee's objections.

## I. BACKGROUND

Governor Lee raises no objection to the background section of Judge Poplin's report and recommendation—that is, her recitation of this case's factual and procedural history. The Court therefore adopts this section of Judge Poplin's report and recommendation as if fully set forth herein.

## II. LEGAL STANDARD

When reviewing a magistrate judge's recommendation on a dispositive issue, the Court conducts a de novo review of that recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). A magistrate judge's recommendation on a motion for attorney's fees is dispositive in nature. *See* Fed. R. Civ. P. 54(d)(2)(D); *see also McCombs v. Meijer, Inc.*, 395 F.3d 346, 360 (6th

Cir. 2005) ("A Magistrate Judge is not permitted to determine costs or fees, but may make a report and recommendation to the district court on such issues. After being presented with the Magistrate Judge's report and recommendation, the district court must then conduct a de novo review of the findings and issue an order as it sees fit." (citation omitted)); *Riddle v. Comm'r of Soc. Sec.*, No. 17-10905, 2019 WL 994682, at *1 (E.D. Mich. Mar. 2, 2019) ("Motions for attorney fees referred to a magistrate judge are regarded as dispositive matters, requiring fresh review by the district court." (citing Fed. R. Civ. P. 54(d)(2)(D); *Massey v. City of Ferndale*, 7 F.3d 506, 510–11 (6th Cir. 1993))); *Lewis v. Miller*, No. 3:14–cv–0897, 2015 WL 4679319, at *1 (M.D. Tenn. Aug. 6, 2015) ("The Report and Recommendation related to the plaintiff's Motion for Attorney's Fees and Costs . . . is considered a dispositive matter.").

A de novo review requires the Court "to give fresh consideration" to the issues before it. *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quotation omitted). In doing so, it "cannot simply 'concur' in the magistrate judge's findings," *McCombs*, 395 F.3d at 360; instead, it must reach "the ultimate determination of the matter" through its own judicial discretion, *Raddatz*, 447 U.S. at 675–66. After its review, it "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## III. ANALYSIS

"[The] basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015) (quotation omitted). The Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, contains one such exception to the American Rule. Specifically, under § 12205 of the ADA, Congress empowers courts to award attorneys' fees to the prevailing party:

> In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, and the United States shall be liable for the foregoing the same as a private individual.

42 U.S.C. § 12205; *see Mich. Flyer, LLC v. Wayne Cnty. Airport Auth.*, 162 F. Supp. 3d 584, 586–87 (E.D. Mich. 2016) (stating that § 12205 of the ADA "creates one of several exceptions to the generally applicable 'American Rule' that usually governs litigation in the United States: 'litigants must pay their own attorney's fees.'" (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 415 (1978))); *see also Gunter v. Bemis Co.*, No. 4:16-cv-00037, 2019 WL 3526337, at *2 (E.D. Tenn. July 25, 2019) ("An exception [to the American Rule] arises where a prevailing party has a statutory right to attorney fees. [Section 12205 of] [t]he ADA has such a fee shifting statute[.]" (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 n.2 (1983))). Section 12205 does not define the term "prevailing party."

Having secured a preliminary injunction against Governor Lee—that is, an injunction barring Governor Lee from enforcing Executive Order No. 84 in Knox County, Tennessee, and from allowing parents in Knox County to opt out of any mask mandate in Knox County's Schools—Plaintiffs now move for attorneys' fees and costs under § 12205, claiming they are the prevailing party in this case under § 12205. They also move for attorneys' fees and costs under another fee-shifting statute: 42 U.S.C. § 1988, which states:

> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318, the Religious Freedom Restoration Act of 1993, the Religious Land Use and Institutionalized Persons Act of 2000, title VI of the Civil Rights Act of 1964, or section 12361 of Title 34, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.

3

42 U.S.C. § 1988(b). Section 1988, however, cannot provide Plaintiffs with attorneys' fees and costs because the ADA and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794—the two statutes under which they filed suit—are not among those that Congress enumerated in § 1988's text. *See Armstrong v. Davis*, 318 F.3d 965, 974 (9th Cir. 2003) ("[Section] 1988 provides a list of the statutes to which its attorney's fees provision applies, and neither the ADA nor the [Rehabilitation Act] is on the list" (citing 42 U.S.C. § 1988(b))); *see also Falor v. Livingston Cnty. Cmty. Mental Health*, No. 5:02–CV–60, 2003 WL 23220759, at *1 (W.D. Mich. Oct. 20, 2003) ("Section 1988 cannot serve as the basis for an award of attorney fees in this case because the ADA is not included in the list of statutes to which § 1988 applies." (citations omitted)); *Caruthers v. Proctor & Gamble Mfg. Co.*, 177 F.R.D. 667, 668 n.1 (D. Kan. 1998) ("Plaintiff erroneously bases his 'prevailing party' attorney fee request on 42 U.S.C. § 1988. . . . The ADA is not one of the statutes embraced by the fee-shifting provision in 42 U.S.C. § 1988(b). ADA attorney fee motions must be brought pursuant to 42 U.S.C. § 12205.").

Even so, the Court, in deciding whether Plaintiffs are the prevailing party under § 12205, may turn to precedent in which courts have considered prevailing-party status under § 1988 because the term "prevailing party" is a "legal term of art" that Congress has employed in "[n]umerous federal statutes." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 600, 603 (2001). Indeed, § 12205 is "modeled on other 'prevailing party' statutes, notably . . . 42 U.S.C. § 1988." *Id.* at 624 n.1 (Ginsburg, J., dissenting) (citation omitted); *see Hunter v. City of Copper Hill, Tenn.*, No. 1:09-CV-238, 2013 WL 5278673, at *7 (E.D. Tenn. Sept. 19, 2013) ("The same standard is used for both Section 1988 and Section 12205 when evaluating a motion for attorney's fees and costs." (citing *id.*)). So the Court, as the parties

have done, will rely on the Supreme Court's and the Sixth Circuit's jurisprudence dealing with prevailing-party status not only under § 12205 but also under § 1988.

### A. Prevailing Party

A prevailing party, in its most unvarnished form, is a party "who has been awarded some relief by the court," i.e., a "judicially sanctioned change in the legal relationship of the parties," *Buckhannon*, 532 U.S. at 603, 605, but applying this basic definition has proven "thorny" for federal courts when a party, like Plaintiffs, claim prevailing-party status after having obtained a preliminary injunction. *McQueary v. Conway*, 614 F.3d 591, 596 (6th Cir. 2010) ("*McQueary I*"). Indeed, "[w]hether a plaintiff has [attained prevailing-party status] is not always easy to discern in cases that expire before a final judgment," just as this case did. *Bobay v. Wright State Univ.*, No. 22-4007, 2023 WL 3963847, at *2 (6th Cir. June 13, 2023). As the parties know well, the Court, by agreement of the parties, dismissed this case as moot before it had the opportunity to address the case's merits and issue a final judgment in either party's favor. [Order, Doc. 156, at 1]. In "a case in which a litigant prevails 'in one sense (by receiving a preliminary injunction)' yet fails to 'obtain a final judgment when the case becomes moot,'" the "inquiry becomes 'contextual and case-specific,' guided by a few general principles." *Bobay*, 2023 WL 396384 at *2 (quoting *Roberts v. Neace*, 65 F.4th 280, 284 (6th Cir. 2023)).

In concluding that Plaintiffs are the prevailing party under § 12205, Judge Poplin began by correctly identifying the general principles comprising this contextual and case-specific inquiry: "[I]n order for the court to award attorney's fees to a party who obtained a preliminary injunction," she wrote, "the Court must find that the relief was [1] 'court-ordered,' [2] 'material,' and [3] 'enduring.'" [R&R at 5 (quoting *McQueary I*, 614 F.3d at 597–99)]. Put another way, the inquiry focuses on whether the preliminary injunction "mainly turns on the likelihood-of-success

[on the merits] and changes the parties' relationship in a material and enduring way." *Roberts v. Neace*, 65 F.4th 280, 284 (6th Cir. 2023) (citation omitted).

Governor Lee objects to Judge Poplin's determination that the preliminary injunction provided Plaintiffs with relief that was enduring. For a preliminary injunction to provide a party with enduring relief, "it must have been irrevocable, meaning it must have provided plaintiffs with everything they asked for." *Miller v. Caudill*, 936 F.3d 442, 448 (6th Cir. 2019) (citing *McQueary I*, 614 F.3d at 597, 599). Governor Lee maintains that the preliminary injunction was a source of "fleeting" relief—not enduring relief—because it did not give Plaintiffs everything they asked for. [Def.'s Objs. at 6]. In raising this argument, Governor Lee stresses that Plaintiffs sought a *permanent* injunction against Executive Order No. 84 not only in their complaint but also, several months after the Court's issuance of the preliminary injunction, in their motion for summary judgment. [*Id.* at 5, 14].[1] In response, Plaintiffs contend that they "obtained precisely what they sought through the preliminary injunction—striking of EO 84 so that they could safely attend public school which they did." [Pls.' Resp. at 5]. According to Plaintiffs, "that educational experience cannot now be taken away from them," and the preliminary injunction therefore provided them with irrevocable relief. [*Id.* at 4].

Judge Poplin agreed, and in doing so, she homed in on the fact that the Court, in issuing its preliminary injunction, concluded that Plaintiffs were likely to succeed on the merits of their claims. [R&R at 5–6]. In addition, she relied on a *G.S. by and through Schwaigert v. Lee*, a case that is similar to Plaintiffs' case here, and that the Sixth Circuit recently affirmed, *G.S. by and through Schwaigert v. Lee*, No. 22-5969, 2023 WL 5205179 (6th Cir. Aug. 14, 2023). In *G.S.*, Chief United States District Judge Sheryl H. Lipman had preliminarily enjoined Governor Lee

---

[1] Plaintiffs have not sought monetary damages of any kind in this case.

from enforcing Executive Order No. 84 in Shelby County, Tennessee, *G.S. by and through Schwaigert v. Lee*, 558 F. Supp. 3d 601, 613 (W.D. Tenn. 2021), and she later ruled that the plaintiffs were the prevailing party and entitled to attorneys' fees and costs, [Order at 7–13, *G.S. by and through Schwaigert v. Lee*, No. 2:21-CV-02552 (W.D. Tenn. Apr. 4, 2023), ECF No. 131]. Judge Poplin relied on Judge Lipman's reasoning to support her own conclusion that this Court's preliminary injunction provided Plaintiffs with enduring relief:

> Now, the COVID-19 pandemic is in a different phase (albeit with the full opportunity to reenergize in virulence and breadth), school-age children are, in large part, able to be vaccinated, and this case is now moot. Yet Plaintiffs already obtained access to in-person school at the time that their health was particularly threatened by the Governor's Executive Order. That relief cannot be revoked. In fact, it is unclear whether the same accommodation would be necessary now, given the change in circumstances—but whether further relief would be granted is immaterial here, because Plaintiffs sought and obtained an end to the Governor's opt-out provision when it threatened the health of their vulnerable children in accessing in-person education.

[R&R at 9 (quoting *id.* at 12–13)].

Judge Lipman, in her opinion awarding attorney's fees to the plaintiffs, also stated that the plaintiffs "have not sought a permanent injunction in any filing besides the original and Amended Complaint, presumably because the Preliminary Injunction did its job." [Order at 13, *G.S. by and through Schwaigert v. Lee*, No. 2:21-CV-02552]. But this statement is incorrect because the plaintiffs in *G.S.* had filed a motion for summary judgment in which they did in fact request a permanent injunction against the enforcement of Executive Order No. 84. *See* [Pls.' Mot. for Summ. J. at 1, *G.S. by and through Schwaigert v. Lee*, No. 2:21-CV-02552, ECF No. 122 ("Plaintiffs move for summary judgment and ask the Court to enter a permanent injunction that prohibits Governor Lee from taking any executive action that interferes with the reasonable accommodations obtained by Plaintiffs consistent with their rights under the ADA/Section 504.")]. Again, Plaintiffs here in this case have done the same thing, requesting a

7

permanent injunction in their motion for summary judgment. *See* [Pls.' Mem. Supporting Mot. for Summ. J., Doc. 132-1, at 4, 7, 8].

> [T]he Executive Order is no longer pending, but it could be reissued by the Governor at any point. To prevent that from happening, this case should be concluded by a summary judgment entering a permanent injunction. . . . It is not 'clear' Executive Order 84 will not be reissued.

[*Id.* at 4].

The issue, or at least a prominent issue, before the Court is whether Plaintiffs' request for a permanent injunction means that the Court's preliminary injunction, as Governor Lee argues, did not provide Plaintiffs with all the relief they asked for—i.e., enduring relief. In addressing this issue, the Court is mindful that it must approach Plaintiffs' request for fees with "hesitancy and skepticism" because a preliminary injunction is a type of interim relief. *Miller*, 936 F.3d at 448. So "when a claimant wins a preliminary injunction and nothing more, that usually will not suffice to obtain fees." *McQueary I*, 614 F.3d at 604. But "a preliminary injunction may well suffice if it [1] mainly turns on the likelihood-of-success inquiry and [2] changes the parties' relationship in a material and enduring way." *Roberts*, 65 F.4th at 284 (citation omitted). Although Governor Lee devotes nearly all of his argument to the second element,[2] i.e., whether the preliminary injunction provided Plaintiffs with enduring relief, he also touches on the first element, whether the preliminary injunction turned on the likelihood of success on the merits. The Court will therefore address both elements.

---

[2] Before Judge Poplin, Governor Lee argued that Plaintiffs did not secure relief in a material way. *See* [Def.'s Resp., Doc. 158, at 8–9]. Before this Court, however, he does not renew this argument, raising no objection to Judge Poplin's conclusion as to materiality. Instead, he contends only that Plaintiffs did not secure relief in an enduring way. *See* [Def.'s Objs. at 4 (asserting that Plaintiffs did not receive "irrevocable relief")].

8

1.  Likelihood of Success on the Merits

When considering whether to issue a preliminary injunction, the Court considers four factors: (1) whether the movant has shown a strong likelihood of success on the merits of the controversy, (2) whether the movant is likely to suffer irreparable harm without an injunction, (3) whether an injunction would cause substantial harm to others, and (4) whether it would serve the public interest. *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Judge Poplin recognized that "the Court found that Plaintiffs established a strong likelihood of success on the merits," [R&R at 5], and the Court would be remiss if it did not add that it conducted an exhaustive merits-based analysis. The Court's analysis of the four factors spanned roughly thirty-four pages of its fifty-seven page memorandum opinion, and of those thirty-four pages, it devoted roughly seventy percent of its analysis to Plaintiffs' likelihood of success on the merits.

The Court's devotion to this merits-based analysis is a strong, if not sure, indication that its preliminary injunction afforded enduring relief to Plaintiffs. *See Roberts*, 65 F.4th at 284 ("[T]he injunctions, entered after briefing and argument, focused on the legal reality that the [plaintiffs] would likely succeed on the merits. We have labeled similar preliminary injunctions as 'final in all but name.'" (citation and quotation omitted)); *see Tenn. State Conf. of NAACP v. Hargett*, 53 F.4th 406, 409 (6th Cir. 2022) (determining that the district court's preliminary injunction provided the plaintiffs with enduring relief in part because "[m]ost of the court's memorandum addressed the plaintiffs' likelihood of success on the merits"). Indeed, the Court's memorandum opinion "was an emphatic and 'unambiguous indication of probable success on the merits' of the plaintiffs' claims," and "the prospect that . . . the court would reverse course,

9

and enter judgment in favor of the defendants, was remote in the extreme." *Hargett*, 53 F.4th at 411 (quotation omitted).

Despite the Court's careful and lengthy merits-based analysis, Governor Lee asserts that the Court's preliminary injunction was "hasty." [Def.'s Objs. at 5]. First, he contends that it was hasty because "the Court set the matter for a preliminary injunction hearing before Plaintiffs even filed a motion for preliminary injunction." [*Id.*]. Second, he complains that it was hasty because he had two business days to prepare for the hearing, and although he twice objected to the Court's inclusion of testimony from an expert witness whom Plaintiffs disclosed the night before the hearing, the Court overruled his objections. [*Id.*]. The Court, as Governor Lee points out, stated: "I understand that the way we conduct preliminary injunction hearings sometimes puts the . . . defendant at a disadvantage, but that's the nature of the beast." [Hr'g Tr., Doc. 34, at 97:14–17]. In Governor Lee's view, "[i]t is incongruous for the Court to conduct proceedings putting [him] 'at a disadvantage' and . . . to rely on the same proceedings to claim the outcome was beyond doubt." [Def.'s Objs. at 6]. In response, Plaintiffs maintain that the Court's "actions cannot be classified as too 'hasty'" because it "held a preliminary injunction hearing, heard from a number of witnesses, received full briefing on the issue of entry of preliminary injunction by all parties, and issued a well-reasoned and thoughtful 56-page opinion granting the preliminary injunction." [Pls.' Resp. at 5 n.2 (internal citation omitted)].[3]

---

[3] Governor Lee's arguments as to the alleged hastiness of the Court's preliminary injunction fail for the simple reason that Governor Lee never raised them before Judge Poplin, and he has therefore waived them. *See AES-Apex Emp'r Servs., Inc. v. Rotondo*, 924 F.3d 857, 867 (6th Cir. 2019) ("[A] district court *never* abuses its discretion when it holds that an issue not actually presented to a magistrate judge is forfeited." (emphasis added) (citation omitted)); *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) ("[A]bsent compelling reasons, [the Magistrate Judge Act] does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate. Hence, Petitioner's failure to raise this claim before the magistrate constitutes waiver." (citations omitted)); *see also Steele v. Jenkins*, No. 17-4171, 2018 WL 2144073, at *4 (6th Cir. Mar. 5, 2018) ("But [the plaintiff] did not raise this claim in his petition; rather, he presented it for the first time in his objections to the magistrate judge's report and recommendation. He therefore has waived review of this claim." (citation omitted)). Plaintiffs themselves,

10

As to Governor Lee's first argument—i.e., that the Court acted hastily because it set a hearing before Plaintiffs formally moved for an injunction—it is without merit. Plaintiffs had requested a preliminary injunction in their verified complaint's prayer for relief, and the Court scheduled a hearing based on that request. While, true, some district courts' local rules require a plaintiff to file a separate motion for a preliminary injunction, *see, e.g.*, E.D. Mich. L.R. 65.1; S.D. Ohio L.R. 65(b), this Court's local rules contain no such requirement. The Court, therefore, did not act hastily by setting a hearing based on Plaintiffs' request for a preliminary injunction in their verified complaint's prayer for relief. *See ATP Science Proprietary, Ltd. v. Bacarella*, No. 20-cv-60827, 2020 WL 3868701, at *3 (S.D. Fla. July 9, 2020) ("While it is common practice for plaintiffs to file their complaint and, then subsequently, file a separate motion for a preliminary injunction, no part of Federal Rule of Civil Procedure 65 requires a separate filing. And the Court is not aware of any case law construing such a requirement.").

Next, as to Governor Lee's argument that the Court acted hastily because it allowed testimony from an expert witness whom Plaintiffs disclosed the night before the hearing, it too is without merit. Governor Lee correctly contends that Rule 65(a) entitles a defendant to "a fair opportunity to oppose the application [for a preliminary injunction] and to prepare for such opposition," *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 432 n.7 (1974) (citation omitted), but he cites no case law to support his argument on the specific issue that he now raises: that the Court's inclusion of the expert testimony divested him of a fair opportunity to oppose the preliminary injunction, *see McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by

---

though, do not contend that Governor Lee has waived these arguments, so the Court will address them on the merits rather than sua sponte reject them as waived.

some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quotation omitted)).

When the Court denied Governor Lee's oral motion to strike the expert testimony at the hearing, it cited the "urgency" of the proceedings and stated that it was aware of no "discovery requirements that apply beforehand" to a motion for a preliminary injunction. [Hr'g Tr. at 97:18–19]. Governor Lee cited no such requirement then, and he cites no such requirement now. *See Midwest Guar. Bank v. Guar. Bank*, 270 F. Supp. 2d 900, 909 n.2 (E.D. Mich. 2003) (rejecting the defendant's argument that an expert's declaration, which the plaintiff filed in support of its motion for a preliminary injunction, did not comply with Federal Rule of Civil Procedure 26(b)(2)—the rule that governs expert disclosures—because the "expedited nature" of the proceedings warranted inclusion of the declaration for the "limited purpose of deciding the [preliminary injunction] motion"). Besides, the Court permitted Governor Lee's attorneys to perform a full cross examination of the expert at issue, lessening if not eliminating whatever prejudice Governor Lee complains of. *See generally Davis v. Alaska*, 415 U.S. 308, 316 (1974) ("Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. . . . The cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness.").

Governor Lee's argument is also on the wrong side of the Supreme Court's and the Sixth Circuit's jurisprudence. In *Sole v. Wyner*, 551 U.S. 83 (2007), the Supreme Court characterized the underlying preliminary-injunction proceedings as "hasty" when the district court entered its injunction the day after the plaintiff had filed suit, and the short turnaround left the defendants

with "little opportunity" to raise meaningful opposition. *Id.* at 84. Unlike the defendants in *Sole*, Governor Lee had ample time and opportunity to challenge Plaintiffs' motion, not only through the cross examination of Plaintiffs' witnesses at the hearing—which the Court, incidentally, did not hold until approximately two weeks after Plaintiffs had filed suit—but also through a complete round of briefing and supplemental briefing. And in a similar vein, the Sixth Circuit has recognized that entry of a preliminary injunction is not hasty when a district court "enter[s] [it] after briefing and argument" and its analysis "focuse[s] on the legal reality that the [plaintiffs] would likely succeed on the merits." *Roberts*, 65 F.4th at 284 (citation omitted). The Court's preliminary injunction meets both criteria, for all the reasons the Court has already mentioned.

So in sum, the Court, in entering its preliminary injunction, did not move so hastily that it deprived Governor Lee of a meaningful chance to oppose it; rather, he had every opportunity to oppose the motion, and he did so—aggressively. Simply, the Court's analysis, as Judge Poplin wrote, centered on the conclusion that Plaintiffs had established a "strong likelihood of success on the merits." [R&R at 5]. Having reached this conclusion, the Court entered a preliminary injunction that was "final in all but name," and it therefore had every semblance of an enduring form of relief. *Roberts*, 65 F.4th at 284 (quotation omitted).

### 2. Enduring Relief

In contending that the Court's preliminary injunction did not afford Plaintiffs enduring relief, Governor Lee argues that enduring relief requires the occurrence of an event that makes the relief permanent. For instance, when a preliminary injunction allows same-sex couples to obtain marriage licenses and wed—and those couples do in fact wed—they are prevailing parties because they have obtained a one-time prayer for relief from the injunction. *Miller*, 936 F.3d at 449. In another example, when protestors obtain a preliminary injunction that allows them to

exercise their constitutional rights at a parade, they are prevailing parties because their exercise of those rights takes place at a specific time and place and "give[s] them all the court-ordered relief they" asked for. *McQueary I*, 614 F.3d at 599 (citing *Young v. City of Chicago*, 202 F.3d 1000, 1000 (7th Cir. 2000)). And in yet another example, when a plaintiff secures a preliminary injunction that delays the enforcement of a statute until a particular event occurs, like a public referendum, he is the prevailing party because the preliminary injunction "brings about that result." *Id.* (citing *Thomas v. Nat'l Sci. Found.*, 330 F.3d 486, 493 (D.C. Cir. 2003)).

According to Governor Lee, the relief that Plaintiffs received from the preliminary injunction does not resemble the event-specific relief in these examples, and Judge Poplin, he insists, did not "identif[y] any relief Plaintiffs received that endures." [Def.'s Objs. at 4]. In addition, Governor Lee argues that Judge Poplin never conducted a contextual and case-specific analysis. [*Id.*]. In response, Plaintiffs maintain that they received enduring relief because the Court's preliminary injunction "lasted from the height of the Delta variant until the following spring when masking was no longer necessary pursuant to lower transmission levels and CDC guidance," and Plaintiffs contend that Judge Poplin "correctly concluded, 'That relief cannot be revoked.'" [Pls.' Resp. at 4 (quoting R&R at 9)].

To start with, Governor Lee's assertion that Judge Poplin failed to conduct a contextual and case-specific analysis or identify any form of enduring relief is simply wrong. Judge Poplin recognized that she must "make a 'contextual and case-specific inquiry,'" [R&R at 7], and she went on to perform this inquiry not only by identifying the nature of the injunctive relief that Plaintiffs had sought, i.e., "mask wearing as an accommodation," [*id.* at 6], but also by indicating that this relief was enduring because it permitted Plaintiffs to safely "return to school," [*id.*], which Judge Poplin, borrowing Judge Lipman's words, described as "'relief [that] cannot be

revoked,'" [*id.* at 9 (quoting *G.S. by and through Schwaigert v. Lee*., No. 2:21-CV-02552, ECF No. 131 at 12–13)].

Next, to the extent Governor Lee attacks Judge Poplin's conclusion that Plaintiffs won enduring relief from the preliminary injunction because it enabled them to return safely to school, he musters no persuasive argument. He highlights the fact that Plaintiffs went on to pursue a permanent injunction, and in doing so, he claims that "[h]ad the preliminary injunction 'given Plaintiffs complete relief,' they would have had no need to argue that a 'permanent injunction wa[s] necessary.'" [Def.'s Objs. at 5 (quoting *Jones v. Haynes*, 350 F. Supp. 3d 691, 697 (M.D. Tenn. 2018))]. But this argument is much too inexact, meaning Governor Lee himself fails to put forward a contextual and case-specific analysis. Indeed, "enduring relief is not synonymous with permanent relief. Else, a preliminary injunction could never justify fees. True to [a] 'contextual and case-specific inquiry,' the lasting nature of relief remains a matter 'of degree.'" *Roberts*, F.4th at 286 (internal citation and quotation omitted).

Through the prism of a contextual and case-specific inquiry, the Court cannot conclude that Plaintiffs' pursuit of a permanent injunction means that the relief they obtained through the preliminary injunction was transitory rather than enduring. In April 2022, when the CDC was no longer recommending universal masking in Knox County because transmission levels had moderated there, Plaintiffs, by every appearance, sought a permanent injunction against the enforcement of EO 84 as a contingency, i.e., "*if* the pandemic spikes and universal masking becomes recommended by the CDC for Knox County schools again." [Pls.' Mem. Supporting Mot. for Summ. J. at 6 (emphasis added)]. Whether Plaintiffs, based on the speculative risk of harm that they identified in their motion, would have succeeded in obtaining this injunction is highly dubious, especially given the decline in infections in Knox County and the development

15

of vaccines for school-aged children. *Cf. Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." (citation omitted)).

But Governor Lee fails to acknowledge that Plaintiffs, to attain prevailing-party status, "need not win every issue" or "receive all requested relief." *Roberts*, 65 F. 4th at 285–86 (citing *Tex. State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93 (1989)). Instead, they "must simply 'achieve[] some of the benefit [they] sought in bringing suit." *Id.* at 286 (alterations in original) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)); *see Hargett*, 53 F.4th at 409, 411 (determining that the plaintiffs were the prevailing party after securing a preliminary injunction against the State of Tennessee even though they had sought but did not obtain a permanent injunction). At the very least, Plaintiffs scored some of what they asked for—and, more likely, *precisely* what they asked for—by filing suit and securing a preliminary injunction that allowed them to safely attend their schools for several months under the refuge of a mask mandate without the threat of enforcement of EO 84. *See Roberts*, 65 F.4th at 285 (determining that church congregants, who obtained a preliminary injunction against a governor's executive order that curbed their ability to attend faith-based gatherings, won enduring relief because the preliminary injunction allowed them to attend these gatherings for several months "without the threat of enforcement" of the executive order (citations omitted)).

And lastly, to the extent Governor Lee argues that Plaintiffs are not the prevailing party because they have not obtained one-time or event-specific relief, this argument is fallacious because any open-and-shut rule that requires enduring relief to hinge on a one-time or event-

16

specific occurrence would war with the Sixth Circuit's directive that district courts must perform a contextual and case-specific analysis. While event-specific injunctive relief can undoubtedly qualify as enduring relief, *see Miller*, 936 F.3d at 449; *Thomas v. Nat'l Sci. Found.*, 330 F.3d 486, 493 (D.C. Cir. 2003); *Young v. City of Chicago*, 202 F.3d 1000, 1000 (7th Cir. 2000), the "nature of the injunction[]," "the longevity of the relief," and "the irrevocability of the relief" can also be dispositive of whether a preliminary injunction provides a party with enduring relief. *Roberts*, 65 F.4th at 284. In *Roberts*—the case that involved the church congregants—the Sixth Circuit concluded that the district court's injunctive relief was enduring because it "focused on the legal reality that the congregants would likely succeed on the merits," "held for [several] months," and, during that time, allowed "the congregants [to] attend faith-based gatherings," a "benefit[] [that] qualif[ied] as enduring." *Id.* at 284–85.

The Sixth Circuit relied on these same points of analyses—the nature of the injunction, the longevity of the relief, and the irrevocability of the relief—in *Tennessee State Conference of NAACP v. Hargett*, 53 F.4th 406 (6th Cir. 2022). In *Hargett*, the plaintiffs, which were various advocacy groups, obtained a preliminary injunction against the enforcement of a Tennessee statute "imposing a raft of new requirements upon persons or organizations conducting voter-registration activities in the State." *Id.* at 408. Although the Tennessee General Assembly later repealed the statutory provisions at issue, the "plaintiffs were able to conduct voter-registration drives for seven months during the run-up to the 2020 election, unburdened by the [statute]." *Id.* at 410–11. The Sixth Circuit decided that the preliminary injunction constituted enduring relief because "[m]ost of the court's memorandum addressed plaintiffs' likelihood of success on the merits," the plaintiffs were able to conduct voter-registration drives for seven months, and

"[t]hose drives, and the voter registrations that resulted from them, are as 'irrevocable' as the marriage licenses in *Miller*." *Id.* at 409, 410–11.

As in *Roberts* and *Hargett*, the "nature of the injunction[]," "the longevity of the relief," and "the irrevocability of the relief" in Plaintiffs' case all point to enduring relief. *Roberts*, 65 F.4th at 284. First, and at the risk of belaboring the point, the Court devoted most of its analysis to Plaintiffs' likelihood of success on the merits, and the nature of the preliminary injunction therefore resonates as enduring. *See Hargett*, 53 F.4th at 409; *Roberts*, 65 F.4th at 284. Second, the Court's injunction against the enforcement of EO 84 remained in effect for several months, like the injunctions in *Hargett* and *Roberts*. *Hargett*, 53 F.4th at 410–11; *Roberts*, 65 F.4th at 285. And third, the injunction gave Plaintiffs something that no one can take away: nearly an entire school year of safe access to their brick-and-mortar classrooms during the pandemic. The preliminary injunction therefore provided them with enduring relief, as Judge Poplin concluded, and the Court declines to disturb her conclusion that Plaintiffs are the prevailing party.

### B. Attorney's Fees and Costs

Having correctly determined that Plaintiffs are the prevailing party, Judge Poplin went on to award them attorneys' fees totaling $127,350 and $3,649.28 in expenses,[4] though Plaintiffs had originally requested $294,250 in fees and $3,835.53 in expenses from Governor Lee. [R&R at 29]. In arriving at these figures, she used the lodestar method, which "approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case" based on local rates. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010). In other words, the lodestar "is the proven number of

---

[4] Neither party objects to Judge Poplin's determination that Mr. Gilbert and Ms. Salonus are entitled to expenses totaling $3,649.28, and the Court therefore offers no opinion as to the propriety of that determination.

18

hours reasonably expended on the case by an attorney, multiplied by a reasonable hourly rate."

*Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005) (citing *Hensley v. Eckerhart*, 461

U.S. 424, 433 (1983)). The familiar *Johnson* "'list of 12 . . . provides a useful catalog of the

many factors to be considered in assessing the reasonableness of an [hourly rate]." *Blanchard*

*v. Bergeron*, 489 U.S. 87, 93 (1989). Those factors are:

> (1) time and labor required; (2) the novelty and difficulty of the questions presented;
> (3) the skill needed to perform the legal service properly; (4) the preclusion of
> employment by the attorney due to acceptance of the case; (5) the customary fee;
> (6) whether the fee is fixed or contingent; (7) time and limitations imposed by the
> client or the circumstances; (8) the amount involved and the results obtained; (9)
> the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of
> the case; (11) the nature and length of the professional relationship with the client;
> and (12) awards in 'similar cases.'

*Isabel*, 404 F.3d at 415–16 (citation omitted). The movant bears the burden of establishing the

reasonableness of his claimed hourly rate. *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F.

App'x 496, 498 (6th Cir. 2011).

After determining the lodestar, a district court may enhance, or adjust, the fee, *Lavin v.*

*Husted*, 764 F.3d 646, 649 (6th Cir. 2014), when the lodestar "does not adequately take into

account a factor that may be properly considered in determining a reasonable fee," *Perdue*, 559

U.S. at 554. "[T]here is," however, "a strong presumption that the lodestar is sufficient," *id.* at

546, and the Supreme Court has consistently declared that an enhancement is permissible only

in "'rare' and 'exceptional' circumstances," *id.* at 552 (quotation omitted); *see Pennsylvania v.*

*Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) ("Although upward

adjustments of the lodestar figure are still permissible . . . such modifications are proper only in

certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and

detailed findings by the lower court." (internal citation and quotation omitted)); *see also Hensley*

*v. Eckerhart*, 461 U.S. 424, 435 (1983) ("[I]n some cases of exceptional success an enhanced

award may be justified."). In *Perdue*, the Supreme Court identified three rare and exceptional circumstances in which an enhancement might be appropriate: (1) "where the method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value," (2) "if the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted," and (3) when "an attorney's performance involves exceptional delay in the payment of fees." *Perdue*, 559 U.S. at 554–56. The movant bears burden of establishing that an enhancement is appropriate. *Id.* at 553.

Because the lodestar is a function of two variables—(1) the number of hours an attorney expended on a case and (2) the reasonable hourly rate of those expended hours—Judge Poplin devoted much of her report and recommendation to each of these variables. Plaintiffs' attorney Justin S. Gilbert billed 339 hours at an hourly rate of $500, for a total of $169,500 in fees, and Plaintiffs' attorney Jessica F. Salonus billed 203.75 hours at an hourly rate of $400, for a total of $81,500 in fees. [Pls.' Mem. Supporting Fees & Costs, Doc. 157-1, at 23–24]. Both attorneys also sought enhancements of their fees by requesting a 1.75 percent multiplier. [*Id.*]. With the multiplier, their fees totaled $296,625 and $142,625, respectively, for a combined total of $439,250. [*Id.*]. Having previously reached a settlement with the Knox County Board of Education, however, Plaintiffs offset the amount of this settlement, $145,000,[5] from their combined total request of $439,250. [*Id.*]. Their final combined total request was $294,250, in addition to $3,835.53 in combined total costs. [*Id.* at 24].

---

[5] Again, Plaintiffs have not sought monetary damages in this case, so the $145,000 amount in settlement proceeds was presumably for fees and expenses. Governor Lee argues that "all fees taxed to the Governor on or prior to April 18, 2022, the day on which KCBOE and Plaintiffs reached a settlement agreement, should be reduced by 50% to account for Plaintiffs' recovery of fees from KCBOE for those same hours for which Plaintiffs seek fees from the Governor." [Def.'s Objs. at 7]. This argument is, frankly, lost on the Court. Governor Lee makes no effort to explain why he is entitled to a further fifty-percent reduction when he has already received the benefit of an offset in the full amount of the settlement.

20

As Judge Poplin noted, Governor Lee challenged Plaintiffs' attorneys' hours and fees on four grounds, arguing that "(1) nearly half of the hours have no reasonable relation to the injunctive relief against EO 84, (2) Plaintiffs seek to recover for time vetting potential clients, (3) Plaintiffs' hourly rates are not reasonable and an enhancement of their hourly fees is not warranted, and (4) counsel billed excessive hours and provided insufficient documentation." [R&R at 11]. Governor Lee renews the first argument in objecting to Judge Poplin's report and recommendation. [Def.'s Objs. at 7]. He also raises an iteration of the third argument, asserting Judge Poplin "conflate[d] the lodestar and enhancement analysis." [*Id.*].

### 1. The Lodestar and the Enhancement

In arguing that Judge Poplin "conflate[d] the lodestar and enhancement analysis," [*id.*], Governor Lee notes that Mr. Gilbert and Ms. Salonus claimed hourly rates of $500 and $400, respectively, but that Judge Poplin awarded them with higher hourly rates of $650 and $500, respectively. [*Id.*]. Judge Poplin found that these higher hourly rates were reasonable after conducting a lengthy analysis under the *Johnson* factors. [R&R at 16–22]; *see* [*id.* at 16 ("The Court finds [the] *Johnson* factors assist the undersigned in determining the reasonable rate for this case." (citing *Van Horn*, 436 F. App'x at 499)). But Judge Poplin also went on to rule that Mr. Gilbert and Ms. Salonus were not entitled to an enhancement because this case lacks rare and exceptional circumstances and, therefore, "does not warrant a multiplier." [*Id.* at 24]. The Court is unclear as to why—and on what legal authority—Judge Poplin increased Mr. Gilbert's and Ms. Salonus's claimed hourly rates by thirty percent and twenty-five percent, respectively, despite having decided that an enhancement via a multiplier was not appropriate.

Mr. Gilbert and Ms. Salonus claim "there is no 'conflating'" because "'[e]nhancements' may be delivered through an increase to the lodestar or through a multiplier," and "[t]he Report

delivered it through the lodestar *instead of* a separate multiplier." [Pls.' Resp. at 8 (emphasis in original)]. But the Supreme Court has declared that the *Johnson* factors—which, again, Judge Poplin relied on in increasing Mr. Gilbert's and Ms. Salonus's claimed hourly rates—"cannot serve as independent bases for increasing the basic fee award." *Del. Valley*, 478 U.S. at 565 (citation omitted); *see Adcock-Ladd v. Sec. of Treasury*, 227 F.3d 343, 349 n.8 (6th Cir. 2000) (recognizing that the *Johnson* factors "cannot be used to augment [the] lodestar" (citing *id.*)); *see also Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 631–32 (6th Cir. 2020) ("The court enhanced the original lodestar calculation by seventy-five percent after it analyzed the twelve factors laid out in *Johnson* . . . . But in doing so, the court skipped over a crucial question: whether this case involves 'rare and exceptional circumstances.'" (quoting *Perdue*, 559 U.S. at 552)).

Although Judge Poplin reached this crucial question and determined that the three rare and exceptional circumstances that the Supreme Court identified in *Perdue* did not warrant an enhancement, [R&R at 22–24], she had, by that point, already ruled that the *Johnson* factors justified an increase in Mr. Gilbert's and Ms. Salonus's claimed hourly rates, *see* [*id.* at 17–22]. And Judge Poplin appeared to acknowledge that she used the *Johnson* factors as independent bases for increasing their hourly rates: "The question before the Court is whether Plaintiffs have shown that this is a rare circumstance warranting a multiplier. . . . [T]he Court has already considered the Plaintiffs' arguments in calculating a reasonable rate for this case. . . . as part of the 12-factor analysis[.]" [*Id.* at 24]; *see* [Def.'s Objs. at 11 (maintaining that "the Report also acknowledges that it considered the same factors when calculating a lodestar as when it considered enhancements")].

Mr. Gilbert's and Ms. Salonus's claimed hourly rates were $500 and $400, respectively, and, notably, they identified these rates as the lodestar fees that the Court should employ in its

22

analysis. *See* [Pls.' Mem. Supporting Fees & Costs at 21 (recognizing that "the lodestars . . . for Gilbert ($500) and Salonus ($400) slightly exceed their hourly rates"]. Although courts have "considerable discretion" in awarding fees, *Powers v. Cottrell, Inc.*, 728 F.3d 509, 514 (6th Cir. 2013) (quotation omitted), the Supreme Court's precedent is pellucid that any increase in, or enhancement of, the lodestar cannot come through the *Johnson* factors. *See Del. Valley*, 478 U.S. at 565; *see also Adcock-Ladd* , 227 F.3d at 349 n.8. Instead, it must come through one of the three rare and exceptional circumstances in *Perdue*. *See Linneman*, 970 F.3d at 632 (stating that *Perdue* "reaffirmed that district courts may enhance an award of attorney's fees under a fee-shifting statute" but "the [Supreme] Court stressed that this should happen *only* in 'rare and exceptional' circumstances" (emphasis added)). Judge Poplin determined that Mr. Gilbert and Ms. Salonus did not establish their entitlement to an enhancement under *Perdue*'s three rare and exceptional circumstances, [R&R at 22–24], but she nonetheless increased their claimed hourly rates by using the *Johnson* factors, [*id.* at 16–17, 22]. Governor Lee's argument that she "conflate[d] the lodestar and enhancement analysis" therefore has merit. [Def.'s Objs. at 7].

The lodestar analysis consists of one question: whether Mr. Gilbert's and Ms. Salonus's claimed hourly rates of $500 and $400, respectively, are reasonable. In answering this question, the Court, as Judge Poplin did, may rely on the *Johnson* factors. *See Blanchard*, 489 U.S. at 93 (recognizing that the *Johnson* "'list of 12 . . . provides a useful catalog of the many factors to be considered in assessing the reasonableness of an [hourly rate]'"); *Isabel*, 404 F.3d at 415 (stating that "[t]he reasonableness of the hours . . . and rate . . . is determined by considering [the] twelve [*Johnson*] factors"). The Court "should initially assess the '*prevailing market rate in the relevant community*'" when determining whether an attorney's claimed rate is reasonable. *Adcock-Ladd*, 227 F.3d at 350 (emphasis in original) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984))).

The prevailing market rate is the rate at which "lawyers of comparable skill and experience can reasonably expect to command within the relevant community," and the relevant community is "the legal community within the court's territorial jurisdiction or venue." *Brooks v. Invista*, No. 1:05-cv-328, 2008 WL 304893, at *3 (E.D. Tenn. Jan. 30, 2008) (citing *id.*). Judge Poplin did not expressly identify a prevailing market rate that she used as a guideline in deciding whether Mr. Gilbert's and Ms. Salonus's claimed hourly rates were reasonable.

In arriving at the prevailing market rate in this district, the Court may rely on Mr. Gilbert and Ms. Salonus' submissions, fee awards in similar cases, the Tennessee State Bar's guidelines, and its own experience and knowledge in considering comparable fee requests. *Van Horn*, 436 F. App'x at 499. Mr. Gilbert and Ms. Salonus have submitted declarations from experienced attorneys. One of these attorneys attests that the prevailing market rate for attorneys handling civil-rights cases in this district is $300 to $1,000 or more per hour. [Decl. of Heather Moore Collins, Doc. 157-5, at 5]. Another attorney declares that the prevailing market rate for attorneys handling civil-rights case in this district is $300 to $600 or more per hour. [Decl. of Anne Bennett Hunter, Doc. 157-6, at 6]. And a third attorney maintains that the prevailing market rate for attorneys handling "cases of this nature" in this district is $300 to $450 per hour. [Decl. of James M. Johnson, Doc. 157-4, at 5].

These declarants agree that that the low end of the prevailing market rate in this district is $300, but each declarant sets forth a different figure for the high end of the prevailing market rate: $1,000, $600, and $450. On average, based on these figures, the high end of the prevailing market rate would be $683. Mr. Gilbert's and Ms. Salonus's claimed hourly rates of $500 and $400, respectively, register well below the average high end of $683. Governor Lee, in objecting to Judge Poplin's report and recommendation, does not advocate for a lower prevailing market

24

rate through any declarations of his own, nor does he challenge Mr. Gilbert and Ms. Salonus's declarants' statements in any way. The Court therefore concludes that Mr. Gilbert's and Ms. Salonus's claimed hourly rates of $500 and $400, respectively, are within the prevailing market rate in this district, and in this regard, are reasonable.

Governor Lee, however, argues that the Court should "reduce the hourly rate sought by Plaintiffs to their customary fees of $450 for Attorney Gilbert and $300 for Attorney Salonus," [Def.'s Objs. at 2]. A fatal problem with this argument, however, is Governor Lee's failure to address *why* the Court, factually or legally, should downsize Mr. Gilbert's and Ms. Salonus's claimed rates to their customary rates. In lieu of argumentation, he merely observes that "the claimed 'lodestar' rates of $500 and $400 exceed the normal hourly rates charged by Plaintiffs' counsel." [*Id.* at 10]; *see McPherson*, 125 F.3d at 995–96 ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quotation omitted)); *see also* E.D. Tenn. L.R. 7.1(b) (stating that a party's brief "shall include . . . the factual and legal grounds which justify the ruling sought from the Court"). But even so, the burden is on Mr. Gilbert and Ms. Salonus to show that their claimed hourly rates of $500 and $400, respectively, are reasonable. *Van Horn*, 436 F. App'x at 498.

In deciding whether they have made this showing, the Court views the eighth *Johnson* factor—the results obtained—as "'[t]he most critical factor' in determining the reasonableness of a fee award[.]" *Isabel*, 404 F.3d at 416 (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)); *see Adcock-Ladd*, 227 F.3d at 349 ("A highly important *Johnson* factor is the *result achieved*. 'Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory

fee.'" (quoting *Hensley*, 461 U.S. at 435)). This factor is so crucial that the Sixth Circuit has, at least in one case, started and ended its analysis with it. *See Isabel*, 404 F.3d at 415–16.

Mr. Gilbert and Ms. Salonus satisfy this factor. In ruling on Plaintiffs' request for a preliminary injunction, the Court repeatedly underscored this case's novelty and its difficulty. *See* [Am. Mem. Op. & Order, Doc. 48, at 10 ("This case requires the Court to consider the ADA's mandate of social integration in an unprecedented context by addressing how a board of education must reasonably accommodate medically compromised students when COVID-19 is now part of daily life inside their schools' walls."); *id.* at 48 ("In resolving the unprecedented question of whether COVID-19 exposes Plaintiffs to a likelihood of irreparable harm inside their schools, the Court views Plaintiffs' reliance on *Helling v. McKinney*, 509 U.S. 25, 33 (1993) as the most compelling argument on the table."); *id.* at 49 ("*Helling*, of course, does not stand on all fours with the facts of Plaintiffs' case; no case does. But much of the Supreme Court's reasoning holds analogous value for Plaintiffs' case, and daresay, it cuts as close to the heart of Plaintiffs' case as any prior legal precedent can.").

In the face of this unprecedented novelty and difficulty, Mr. Gilbert and Ms. Salonus, through the development of creative legal theories and shrewd legal argumentation, obtained nothing short of an extraordinary result for their clients—a mask mandate that endured for the complete school year in Knox County Schools, and that arguably saved the lives of dozens or possibly hundreds of students who suffered from serious underlying medical conditions during the pandemic's height. The Court agrees that "[*o*]*ne-hundred percent success* on the array of issues the defendants put before the Court is inarguable." [Decl. of James Johnson at 6]. Mr. Gilbert's and Ms. Salonus's claimed hourly rates of $500 and $400, respectively, are therefore reasonable and will operate as the lodestar fees. Governor Lee's conclusory contention that the

Court should slash these claimed rates to $450 and $300, respectively, is much too cadaverous to have merit. *See Adcock-Ladd*, 227 F.3d at 350 ("Generally, a 'strong presumption' favors the prevailing lawyer's entitlement to his lodestar fee." (quoting *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992))); *Isabel*, 404 F.3d at 416 ("[A] reduction in attorney fees is to be applied *only* in rare and exceptional cases where *specific evidence* in the record requires it." (emphasis added) (citation omitted)).[6]

### 2.   Relation of the Fees to Injunctive Relief Against EO 84

Again, Governor Lee previously challenged Mr. Gilbert's and Ms. Salonus's hours and fees on four grounds, one of which was that "nearly half of the hours have no reasonable relation to the injunctive relief against EO 84." [R&R at 11]. Under this argument, Governor Lee raised two sub-arguments. He argued that Plaintiffs' attorneys have no right to recover fees from him relating to two legal matters: (1) the work that they performed on the Knox County Board of Education's appeal of the Court's preliminary injunction—an appeal to which Governor Lee was not a party—and (2) the work that they performed pertaining to whether the Knox County Board of Education was violating the Court's mask-mandate. [*Id.*].

Judge Poplin declined to reduce the hours that Plaintiffs billed toward Governor Lee on either matter, and in declining to do so, she noted Plaintiffs' argument that Governor Lee and the Knox County Board of Education, as co-defendants, resemble joint tortfeasors. [R&R at 12]. As joint tortfeasors, "[t]he entries are just not neatly divisible," Plaintiffs argued. [*Id.*]. Judge Poplin appeared to agree that she could not neatly divide the entries in a way that would allow her to make the deductions that Governor Lee sought. [*Id.* at 13]. She acknowledged Plaintiffs'

---

[6] Neither party objects to Judge Poplin's determination that that Mr. Gilbert and Ms. Salonus are not entitled to an enhancement with a 1.75 multiplier, and the Court therefore offers no opinion as to the propriety of that determination.

argument that their receipt of $145,000 in settlement funds from the Knox County Board of Education provided Governor Lee with "a very generous contribution offset," [*id.* at 12], and she reasoned that, in light of this offset, any further deductions in Governor Lee's favor would have been "unreasonable," [*id.* at 13]. In citing the unreasonableness of these deductions, Judge Poplin's chief concern appeared to be the Supreme Court's admonition that federal judges, in determining fees, should not become "green-eyeshade accounts" preoccupied with "achiev[ing] auditing perfection." [*Id.* (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011))]. Now, Governor Lee, in objecting to Judge Poplin's report and recommendation, argues that Judge Poplin erred in declining to reduce Plaintiffs' attorneys' fees relating to the work that they performed on the Knox County Board of Education's appeal and that they performed to ensure the Knox County Board of Education was not violating the Court's mask-mandate. *See* [Def.'s Objs. at 7 ("The Report awards Plaintiffs fees for work that bears no relationship to Plaintiffs' claims against the governor.")].

Plaintiffs' attempt to cast Governor Lee as a joint tortfeasor who received a generous contribution is unpersuasive. "Typically, a right to contribution is recognized when two or more persons are liable to the same plaintiff for the same injury and one of the joint tortfeasors has paid more than his fair share of the common liability." *Nw. Airlines, Inc. v. Transp. Workers Union of Am.*, 451 U.S. 77, 87–88 (1981). But courts are not free to read a right of contribution into a statute that does not provide for one, *id.* at 90–91, 98, and Plaintiffs, maybe for this reason, do not contend that Congress created a right of contribution under the ADA, *see id.* at 98 (holding that no implied right of contribution exists under Title VII); *Bowers v. Nat'l Collegiate Athletics Ass'n*, 346 F.3d 402, 429–33 (3d Cir. 2003) (determining, based on *Northwest*, that no implied right of contribution exists under the ADA); *Hart v. City of Williamsburg, Ky.*, No. Civ. A. 6:04-

321-DCR, 2005 WL 1676894, at *2 n.1 (E.D. Ky. July 16, 2005) (ruling, based on *Northwest*, that no right of contribution exists under the ADA).

In addition, while Plaintiffs' characterization of Governor Lee as a joint tortfeasor may have been an apt way of describing the harm that he posed to Plaintiffs during the *pendency* of the litigation, it is conceptually wrong at this postmortem stage of the litigation when Plaintiffs' lone pursuit is fees, not monetary damages for harm. *Cf. Sullivan Cnty., Tenn. v. Home Indem. Co.*, 925 F.2d 152, 153 (6th Cir. 1991) (determining that an award of attorney's fees and costs under § 1988 are not damages); *cf. also Bravo v. City of Santa Maria*, 810 F.3d 659, 667 (9th Cir. 2016) (stating that "costs are not analogous to damages"). Indeed, Plaintiffs never sought monetary damages at any point in this case, only injunctive relief, and § 12205, unlike other provisions of the ADA—e.g., 42 U.S.C. §§ 12188(a) and 12188(b)(2)(B)—makes no mention of damages and permits only the recovery of fees, costs, and expenses. In addition, Plaintiffs cite no precedent for their contention that the Court should embrace principles of tort law as a framework for assessing the propriety of fees in any context, much less under the ADA specifically. *See Breaud v. Breaud*, No. 1:15-cv-00053, 2018 WL 4680325, at *8 (M.D. Tenn. Sept. 28, 2018) ("Defendants do not cite any authority standing for the proposition that attorney's fees are subject to the same rules of joint and several liability. . . . [T]he Court finds that Defendants have failed to establish that joint and several liability is applicable to the award of attorney's fees here.").

Still, the Court applauds Plaintiffs' creativity in attempting to solve a sticky issue: how to guide the Court in awarding fees in a case that involves one settling co-defendant and one non-settling co-defendant. But the fact is that "[t]here is no precise rule or formula for making [attorney fee award] determinations," and the Court "necessarily has discretion in making [an] equitable judgment." *Hensley*, 461 U.S. at 436–37. In terms of equity, Plaintiffs argued that

Governor Lee received a "very generous contribution offset of $145,000 from Knox County's settlement." [Pls.' Reply, Doc. 159, at 4]. Judge Poplin likewise acknowledged that Plaintiffs "have taken an offset in their fee request" and "are not requesting the entire amount of their fees against" Governor Lee, and she therefore declined to order the deductions in fees that Governor Lee advocated for. [R&R at 13].

In the Court's view, however, Plaintiffs' decision to take an offset does not resonate as an act of generosity but as an act of legal necessity. *See Bravo*, 810 F.3d at 667 ("[A] district court abuses its discretion when it refuses to offset an award of attorney fees by a settling defendant's payment of those same fees."); *cf. E.D.S. Corp. v. W.A. Foote Mem'l Hosp.*, 25 F.3d 406, 410 (6th Cir. 1994) ("[A] nonsettling defendant is entitled to an offset in the amount of the settlement between a settling defendant and the plaintiff." (citation omitted)); *cf. also Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 333 (1980) ("It . . . goes without saying that the courts can and should preclude double recovery by an individual."). The offset is not an accommodation that, in and of itself, relieves Plaintiffs of their burden to demonstrate their entitlement to the *entire* amount of fees that they are demanding from Governor Lee. After all, even with the offset, Plaintiffs are still requesting $294,250 in fees from Governor Lee, and Governor Lee has every right to contest this amount by seeking deductions that have legal or equitable merit.

The Court sees no legal or equitable justification for saddling Governor Lee with fees arising from an appeal to which he was never a party. *See Quinones v. City of Evanston*, No. 91 C 3291, 1995 WL 656690, at *6 n.6 (N.D. Ill. Nov. 6, 1995) ("[The court] do[es] not see how [it] can assess attorneys' fees against an entity that is not a party to [a] case."). The Court also sees no legal or equitable justification for saddling Governor Lee with fees arising from Plaintiffs'

claims of noncompliance with the mask mandate, which was solely the Knox County Board of Education's responsibility to comply with. *See* [Am. Mem. Op. & Order at 56 (ordering the Knox County Board of Education to file monthly status reports to ensure its compliance with the Court's mask mandate)].

Plaintiffs, however, argue that "all fees are related to EO 84" because "the *entirety of the case* stems directly from . . . Executive Order 84," "Knox County acknowledged that it was EO 84 that prevented it from adopting universal masking," and "the Governor creat[ed] the overarching impediment to universal masking" in Knox County Schools. [Pls.' Reply at 4 (emphasis in original)]. At the preliminary-injunction stage, these arguments were integral in persuading the Court that, without a preliminary injunction, EO 84 would "reduce[] any board of education's mask mandate to a mere paper tiger." [Am. Mem. Op. & Order at 15]. But now, in exhuming these arguments in the context of fees, Plaintiffs entreat the Court to accept their theory that Governor Lee and the Knox County Board of Education were joint tortfeasors— not only at this case's inception when EO 84 was in effect but also through the Knox County Board of Education's appeal and throughout the mask-mandate's multi-month lifespan. For the purpose of an award of fees, this theory fails not only because it lacks legal or equitable merit— for all the reasons that the Court has already mentioned—but also because it suffers from a lack of adequate legal development on Plaintiffs' part.

The only remaining question for the Court is how to identify and deduct the hours that Plaintiffs spent on the appeal and on the enforcement of the mask mandate. The question is a somewhat convoluted one because of the offset that Governor Lee has already received from Plaintiffs' settlement with the Knox County Board of Education. The settlement funds, which, again, totaled $145,000, presumably accounted for some, most, or maybe even all of the hours

31

that Plaintiffs devoted to the appeal and to the enforcement of the mask mandate. The record, however, lacks documentation showing precisely how many of these hours were part of the settlement. Governor Lee attempts to navigate around the record's lack of documentation by directing the Court to Plaintiffs' billing statements, which he uses to arrive at the hours that, in his view, Plaintiffs allocated to the appeal and the enforcement of the mask mandate. As to the appeal, Governor Lee contends that Mr. Gilbert billed 36.25 hours and Ms. Salonus billed nine hours, [Def.'s Ex. 1 at 5–6], and as to the enforcement of the mask mandate, he identifies many dozens of billable hours—76 hours for Mr. Gilbert and 46.25 hours for Ms. Salonus, [*id.* at 1–5].

But the representations that Governor Lee makes to the Court by relying on the billing statements are specious—and arguably not in good faith—for two reason. First, he grossly exaggerates the number of hours that Plaintiffs spent on compliance-related issues with the mask mandate. The Court can identify only 21.25 hours that Mr. Gilbert *specifically* devoted to compliance-related issues and only 14.5 hours that Ms. Salonus *specifically* devoted to compliance-related issues:

### ATTORNEY JUSTIN GILBERT

| 11/20/2021 | Review documents regarding degree of noncompliance within the schools, refusals at the administrative and staff level to properly follow judge's instructions and consider hot wo manage; respond to all clients | 1 |
| --- | --- | --- |
| 12/10/2021 | Review inquiries and complaints of teachers permitting masks with gaping holes and a bus driver refusing to wear face covering as inconsistent with order governing Knox County; recommendations and queries made | 1 |
| 12/12/2021 | TC's and emails – clients advise that certain teachers are informing kids that any mask whether lace, mesh, or gaping is allowed because Judge Greer's decision "did not specify type of mask," Address managing same | .5 |

| | | |
|---|---|---|
| 1/5/2022 | Prepare synthesis of non-compliance letter to counsel | .5 |
| 1/5/2022 | Rv substantial documentation of mask non-compliance with injunction at student-level, principal level, staff level, teacher level, with supporting documentation photos and social media and assess how best to synthesize and work with counsel | 4 |
| 1/31/2022 | Emails with D. Sanders re compliance issues and then advise clients of extension | .25 |
| 2/2/2022 | Work on motion for court monitor including research for same | 3 |
| 2/4/2022 | Communicate and obtain feedback from all clients re: Knox county position on compliance | 1 |
| 2/4/2022 | Work on motion for court monitor and/or contempt | 3 |
| 2/9/2022 | Watch Board Meeting re: masking issues, compliance, and litigation issues and summarize for all clients | 2.5 |
| 2/15/2022 | RV Response to Motion for Monitor | 1 |
| 2/15/2022 | Research and draft Reply to Motion for Monitor | 3.25 |
| 3/25/2022 | review latest ESSER update for masking compliance | .25 |
| | | **21.25** |

[Def.'s Ex. 1 at 3–5].

## ATTORNEY JESSICA SALONUS

| | | |
|---|---|---|
| 9/26/2021 | Review of social media posts from Knox citizens and officials re: non-compliance with Court order; emails with clients and co-counsel re: same | .5 |

33

| | | |
|---|---|---|
| 11/19/2021 | Review documentation from clients re: non compliance with masking requirements | .25 |
| 12/10/2021 | Receipt and review of photos and documentation re: KCS permitting lace masks, masks on chins, no masks, and staff to refuse | .25 |
| 12/28/2021 | Review documentation of KCS principal, board member, and students maskless at indoor sporting event | .25 |
| 1/5/2022 | Review draft letter to KCS re: non-compliance with preliminary injunction order and correspondence with co-counsel re: same prior to sending to KCS | .25 |
| 1/31/2022 | Correspondence with Co-counsel and clients re: status and continued violations of mask mandate | 2.25 |
| 2/4/2022 | Two rounds of revisions and additions to Motion and Memo for Court Monitor; locate and prepare exhibits to accompany filing; finalizing Motiona [sic] dn [sic] Memo for Court Monitor; review rule re: sealing and discuss which exhibits to file with co-counsel under seal | 6.5 |
| 2/7/2022 | Correspondence with Co-counsel and clients re: compliance | .5 |
| 2/15/2022 | Review KCS's Response to Motion to appoint court monitor and notate reply points | 2.5 |
| 2/16/2022 | Review and revise for filing Plaintiffs' Reply to KCS's Response to Motion for Court Monitor | 1.25 |
| | | **14.5** |

[*Id.* at 1–2].

Second, Governor Lee ignores the offset that he has already received from Plaintiffs'
settlement with the Knox County Board of Education and the possibility, if not probability, that
the offset from this settlement includes some, most, or all of the hours that Plaintiffs devoted
to the appeal and the enforcement of the mask mandate. If the Court, despite the reasonable
possibility that the offset to Governor Lee included some of these hours, were to further trim

34

Plaintiffs' hours by the amount that Governors Lee requests, he would likely receive a double benefit: a benefit from the offset and a benefit from a further reduction of the hours that were already part of the offset. The full extent of that benefit, though, is unclear because, again, the record lacks proof of the number of hours that the settlement—and, by extension, the offset—covered for the appeal and the enforcement of the mask mandate. Under these circumstances, when the record leaves the Court unable to perform a calculation with a line-by-line approach, it must aim to achieve "rough justice" by resorting to the "arbitrary but essentially fair approach of simply deducting a small percentage of the total hours." *Carter v. Hickory Healthcare Inc.*, 905 F.3d 963, 970 (6th Cir. 2018) (quotations omitted). "Such an approach seems preferable to an attempt to pick out, here and there, the hours which were duplicative." *Northcross v. Bd. of Educ. of Memphis City Schs.*, 611 F.2d 624, 637 (6th Cir. 1979).

Using this approach, the Court will reduce the hours that Mr. Gilbert and Ms. Salonus spent on the appeal and the enforcement of the mask mandate by ten percent each. Mr. Gilbert billed 36.25 hours and Ms. Salonus billed nine hours for the appeal, [Def.'s Ex. 1 at 5–6], and the Court will therefore reduce Mr. Gilbert's hours from 36.25 hours to 32.625 hours and will reduce Ms. Salonus's hours from nine hours to 8.1 hours. Mr. Gilbert billed 21.25 hours and Ms. Salonus billed 14.5 hours for the enforcement of the mask mandate, and the Court will therefore reduce Mr. Gilbert's hours from 21.25 hours to 19.125 hours and will reduce Ms. Salonus's hours from 14.5 hours to 13.05 hours.

And finally, Mr. Gilbert and Ms. Salonus have also requested fees for the work that they performed in responding to Governor Lee's objections—a request that Judge Poplin did not have the opportunity to address. Specifically, Mr. Gilbert requests $4,712.50, for 7.25 billable hours at an hourly rate of $650 per hour, [Decl. of Mr. Gilbert, Doc. 167-1, at 3–4], and Ms.

Salonus requests $3,250, for 6.5 billable hours at an hourly rate of $500 per hour, [Decl. of Jessica Salonus, Doc. 167-2, at 3]. Governor Lee has not responded to Mr. Gilbert's and Ms. Salonus's requests for fees for the work that they performed in responding to his objections, so the Court presumes that he does not oppose them. *See* E.D. Tenn. L.R. 7.2 ("Failure to respond to a motion may be deemed a waiver of any opposition to the relief sought."). The Court will therefore add 7.25 billable hours to Mr. Gilbert's 339 total billable hours, but at a rate of $500 per hour, and it will add 6.5 billable hours to Ms. Salonus's 203.75 total billable hours, but at a rate of $400 per hour.

## IV. Conclusion

For the reasons stated by the Court in this opinion, Governor Lee's Objections to the Report and Recommendation [Doc. 166] are **SUSTAINED in part** and **OVERRULED in part**. The report and recommendation [Doc. 165] is **ACCEPTED** as to Judge Poplin's conclusion that Plaintiffs are the prevailing party and **MODIFIED** as to her decision on and award of attorneys' fees. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Plaintiffs' Renewed Motion for Attorneys' Fees and Costs [Doc. 157] is **GRANTED in part** and **DENIED in part**, and the Court will compensate Mr. Gilbert at his claimed rate of $500 per hour and will compensate Ms. Salonus at her claimed rate of $400 per hour. The Court **ORDERS** that Mr. Gilbert and Ms. Salonus recover the following amounts in fees and expenses from Governor Lee:

## ATTORNEY JUSTIN GILBERT

| Total Hours Billed | Reductions in Time | Total Compensable Hours | Hourly Rate | Total Fees | Offset | Total Fees after Offset | Expenses |
|---|---|---|---|---|---|---|---|
| 346.25 | 60.75[7] | 285.5 | $500 | $142,750 | $100,500 | $42,250 | $1,209.65 |

## ATTORNEY JESSICA SALONUS

| Total Hours Billed | Reductions in Time | Total Compensable Hours | Hourly Rate | Total Fees | Offset | Total Fees after Offset | Expenses |
|---|---|---|---|---|---|---|---|
| 210.25 | 30.6[8] | 179.65 | $400 | $71,860 | $44,500 | $27,360 | $2,439.63 |

The Court will enter a judgment order consistent with this opinion.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE

---

[7] This figure includes the fifty-five hours that Judge Poplin previously deducted from Mr. Gilbert's hours. Neither party objects to this deduction, and the Court therefore offers no opinion as to its propriety.

[8] This figure includes the 28.25 hours that Judge Poplin previously deducted from Ms. Salonus's hours. Neither party objects to this deduction, and the Court therefore offers no opinion as to its propriety.